## M'Culloh vs. Dashiell's Adm'r.—June, 1827.

C & T drew a bill in favour of M, on D & B, partners in trade, which they accepted. M sued D & B at law on their acceptance, and pending the suit D died. Judgment being had against B, he being insolvent obtained a discharge under the act relating to insolvent debtors. The defendant administered on D's estate, and received assets from his separate property to a large amount, though insufficient to pay D's individual debts, *and also received some of the partnership funds.* The judgment not being paid, and the partnership funds being insufficient to pay its debts, M filed a bill in equity against D's administrator, claiming to be paid out of the separate assets, and equal proportion with D's separate creditors. *Held,* that he was not entitled to recover.

Joint creditors in equity can only look to the surplus of the separate estate, after the payment of the separate debts.

Separate creditors, in equity, can only seek indemnity from the surplus of the joint fund, after the satisfaction of the joint creditors.

Where the claims of joint creditors do not come into conflict with those of the separate creditors, but only with the interests of the representatives of the deceased partner, equity will decree to joint creditors a satisfaction of their claims, by considering them, as they are considered at law, both joint and several.

At law the joint creditors may pursue both the joint and separate estate, to the extent of each, for the satisfaction of their joint demands, without restriction from a court of equity; yet when by the death of one of the

parties, the legal right survives against the surviving partner, and is ex-
tinguished against the deceased partner, that court will give to the sepa-
rate creditors all the advantages, thus by accident thrown upon them.
The assets of insolvents are distributable according to equity.

APPEAL from *Somerset* County Court, sitting as a court of
equity. In this case the bill of the complainant, (now appel-
lant,) stated, and the parties admitted, that in 1817 *Peter Da-
shiell* and *Richard Bennett* were partners in trade, dealing in
merchandise, under the firm of *Dashiell* and *Bennett.* That
*Chase* and *Tilyard*, being indebted to the complainant, drew
a bill of exchange on *Dashiell* and *Bennett*, directing them
to pay to the order of the complainant $700, which was ac-
cepted by *Dashiell* and *Bennett.* That the complainant in the
year 1818 instituted a suit at law against *Dashiell* and *Bennett*
for the recovery of the money. due on the said acceptance, and
pending the suit *Dashiell* died intestate. That judgment was
afterwards recovered against *Bennett*, the surviving partner,
and upon the return of the execution issued on the judgment,
*Bennett* petitioned and obtained the benefit of the act for the
relief of insolvent debtors. That at the time of his petition and
discharge he had no property; and no part of the said judgment
had been paid. That the defendant (the appellee,) obtained let-
ters of administration on the estate of *Dashiell*, and had assets in
his hands to the amount of $13,061 43. That the personal estate
of *Dashiell* is insufficient to pay his separate and private debts.
That the defendant, as his administrator, had received of the
partnership funds $35 93. The complainant claimed to be paid
out of the assets in the defendant's hands, an equal proportion of
their claim with the other creditors of *Dashiell.* But the Coun-
ty Court, [*Martin*, Ch. J. and *Robins*, A. J.] refused to allow
the complainant's claim, and decreed that no part of his claim
should be paid, except from the partnership funds, until the
separate and individual debts of *Dashiell* should be first paid;
and that the surplus, if any, should be applied to the payment
of the partnership debts, and not otherwise. From this decree
the complainant appealed to this court.

The cause was argued at last June term before BUCHANAN,
Ch. J. and EARLE, STEPHEN, ARCHER, and DORSEY, J.

*J. Bayly*, for the Appellant, stated the question to be, Whether the complainant in the court below, and now appellant, was entitled to be paid an equal proportion of his claim, with the other creditors, out of the assets in the defendant's hands? Or whether his claim shall be postponed until all the separate and individual creditors shall have been first paid, and only admitted to a proportion of the surplus, if any?

To show that the complainant was entitled to be paid an equal proportion of his claim with the separate creditors of *Dashiell*, out of the assets in the hands of the defendant, he referred to the acts of 1798, *ch.* 101, *sub ch.* 8, *s.* 17, and 1805, *ch.* 110, *s.* 7.   *Murray & Sansom vs. Ridley's Adm'x.* 3 *Harr. & M'Hen.* 175.   *Hamersley vs. Lambert*, 2 *Johns. Ch. Rep.* 508.   *Tucker vs. Oxley*, 5 *Cranch*, 34, 39.   *Ex parte Elton*, 3 *Ves.* 238.   *Stephenson vs. Chiswell, Ib.* 566.

*R. N. Martin* and *Tingle*, for the Appellee.   Where there is a separate estate, and individual and co-partnership creditors, the first have the first claim out of the estate.   The interest which co-partnership creditors have, is after the payment of individual debts.   2 *Madd. Ch.* 463.   Partnership effects shall in the first place be applied to pay partnership debts.   The separate creditors can only resort to the surplus.   1 *Madd. Ch.* 463.   2 *Madd. Ch.* 466.   *Ex parte Crowder*, 2 *Vern.* 706. *Ex parte Hunter*, 1 *Atk.* 227.   *Ex parte Cook*, 2 *P. Wms.* 500.   *Ex parte Elton*, 3 *Ves.* 238.   *Ex parte Clarke*, 4 *Ves.* 677.   *Ex parte Abell, Ib.* 837, 839.   *Thomas vs. Frazer*, 3 *Ves.* 399, *(note.)*   *Ex parte Clay*, 6 *Ves.* 813.   *Ex parte Reeve*, 9 *Ves.* 590.   *Gray vs. Chiswell, Ib.* 124.   *Gow on Part.* 270, 271, 272, 317, 367, 461.   1 *Bac. Ab.* tit. *Bankruptcy*, 460.   *Lane vs. Williams*, 2 *Vern.* 277, 292.   *Simpson vs. Vaughan*, 2 *Atk.* 31.

*J. Bayly*, in reply, cited *Murray vs. Murray*, 5 *Johns. Rep.* 60.   Act of 1798, *ch*, 101, *sub ch.* 8, *s.* 5, 7, 10, 16.   *Ex parte Hodgson*, 2 *Bro. Ch. Rep.* 5.   *Harrison vs. Sterry*, 5 *Cranch*, 302.

                                        *Curia adv. vult.*

ARCHER, J. at the present term, delivered the opinion of the court. The bill filed in this cause states that a bill of exchange was on the 18th of August 1817, drawn by the firm of *Chase* and *Tilyard* upon *Dashiell* and *Bennett*, co-partners in trade, for the sum of $700, in favour of the complainant, and that it was by the drawees duly accepted; that a suit was instituted against *Dashiell* and *Bennett* upon the said acceptance by the complainant; that pending the action in *Somerset* county court, the intestate of the defendant, and one of the firm of *Dashiell* and *Bennett* died, and judgment was obtained against *Bennett* the surviving partner. That *Bennett* applied for and obtained the benefit of the insolvent laws of this state, having been finally discharged at November term 1820, no part of the claim having been paid; that the said surviving partner had no property either joint or separate, wherewith satisfaction could be made of the said debt. That *Parsons*, the respondent, took out letters of administration on the estate of *Dashiell;* and prays that a decree may pass directing the administrator to pay the amount of the acceptance from the assets of the deceased, or such part thereof as, upon a just distribution of the assets, he may as one of his creditors be entitled to. The bill of exchange above referred to, the judgment, and certificate of the final discharge of *Bennett*, are filed as exhibits in the cause; and the following admission of counsel is contained in the record: "That the trustee of *Richard Bennett*, an insolvent debtor, has not received any property belonging to *Bennett;* that no part of the debt due to the complainant has been paid either by the trustee, or by *Bennett;* that the personal estate of *Dashiell* is insufficient to pay his private and individual creditors; that the defendant has received of the partnership debts due to the firm of *Bennett* and *Dashiell*, $35 93. The parties moreover admit the exhibits above stated as testimony, and waive the formality of making either the trustee, or *Bennett* the surviving partner, a party to these proceedings."

The question presented for the decision of this court upon this record, is whether the complainant is entitled to be paid an equal proportion of his claim, with the separate creditors of *Dashiell*, out of the assets in the defendant's hands; or whe-

ther the claim, being a joint claim, shall be postponed until all the separate creditors shall be first fully paid?

The question thus stated is one of considerable importance; and although, undoubtedly, of very frequent occurrence in the subordinate testamentary tribunals, has never, we believe, received an adjudication in the appellate court, or in any of the higher courts of original jurisdiction.

There are very few cases in the *English* books bearing directly upon the distribution of assets, in a case situated as this is. It has been contended in argument, that it must be governed by the principles adopted in *England* in the marshalling of assets in bankruptcy. And as *they* are distributed *according to equity*, if the rule can be definitively ascertained, it ought to govern here. But an examination of the authorities, will show, that it has been very unsteady and fluctuating; varying frequently in form, often in substance, according to the ideas entertained by each succeeding chancellor, of the rights of the joint and separate creditors; and moulded more upon their notions of convenience to all the parties concerned, than as standing upon legal reasoning. *Dutton vs. Morrison,* 17 *Ves.* 205. Amid the multitude of decisions which have taken place upon this subject, it is no easy task to trace the history of the rule of distribution in bankruptcy.

But this examination will satisfy us, that amidst all the fluctuations of the rule, the principles established in the first cases occuring more than a century since, have but for a short period, been materially encroached upon; and that now the leading principles of distribution, with some modifications, are what they were originally established to be.

In *Ex parte Crowder,* 2 *Vern.* 706, decided in 1715, which was an application on the part of the separate creditors, to be let in under a joint commission, the separate estate being of small value, it was decided that they might be permitted to prove their claims under the joint commission, but that the joint funds were applicable, in the first instance, to the payment of joint debts, and then the separate debts; and that the separate effects should be applied to the payment of the separate debts, and that the surplus should go to the liquidation of the joint debts. In *Ex parte Cook,* 2 *P. Wms.* 500, (in 1728,)

Lord Chancellor *King* followed the determination in *Ex parte Crowder*, and declared it to be settled, and that it was a resolution of convenience, that the joint creditors shall be first paid out of the partnership estate, and the separate creditors out of the separate estate of each partner, and if there be a surplus of the joint estate, besides what will pay the joint creditors, the same shall be applied to pay the separate creditors; and if there be on the other hand a surplus of the separate estate, beyond what will pay the separate creditors, it shall go to supply any deficiency that may remain as to the joint creditors. In *Ex parte Hunter*, 1 *Atkyns*, 228, (in 1742,) Lord *Hardwicke* says, as between joint and separate creditors the joint estate shall be applied to the joint creditors, and the separate estate to the separate creditors. The rule that prevailed during the administrations of Lords *King* and *Hardwicke*, from 1715 down to the time of Lord *Thurlow*, was that joint creditors could not prove under a separate commission, for the purpose of receiving dividends with the separate creditors, *( Watson on Part.* 244, *Ex parte Taitt*, 16 *Ves.* 195;*)* but only for the purpose of going for the surplus after the satisfaction of the separate creditors. But Lord *Thurlow* broke in upon the established practice of the court, which had prevailed for sixty years; and in 1785, in *Ex parte Hodgson*, 2 *Bro. Cha. Rep.* 5, resolved that there was no distinction between joint and separate creditors; that they ought to be paid out of the bankrupt's estate, and his moiety of the joint estate; and that the joint creditors ought to come in *pari passu*, with the separate creditors. This resolution laid down, as it is, in broad and general terms, would appear to have broken down all the boundaries previously established, between the rights and priorities of the joint and separate creditors; yet if taken with the limitations with which it is said, by *Watson on Partnership* to have been qualified, it will appear to have made this innovation only —that they should all, joint as well as separate creditors, be permitted to prove their claims against the separate estate upon a separate commission; but that it was competent for the assignees to confine the joint creditors, where there was a joint estate, to that fund exclusively, by filing a bill in equity against the other partners, and obtaining an injunction upon the order

in bankruptcy. And that this was the consequence of Lord *Thurlow's* adjudication is apparent from Lord *Rosslyn's* judgment in *Ex parte Elton,* 3 *Ves.* 238. Thus the rights of the joint and separate creditors, on their respective funds where there was a joint estate, was maintained, notwithstanding the alteration thus made in the order in bankruptcy. In the case of *Ex parte Elton,* decided in 1796, the rule established in 1785, was deemed by the then chancellor to be an inconvenient one, because every order which he passed in bankruptcy, that the joint creditor should receive a dividend out of the separate estate, might give rise to a bill in equity, on the part of the separate creditors to restrain this order and to secure the appropriation of the separate estate to the satisfaction of the separate debts; and it was adjudged, that a joint creditor might prove his claim under a separate commission, not for the purpose of receiving a dividend, until an account should be taken of what he had or might have received from the partnership effects. Thus the chancellor, in the modification which he gave to the order in bankruptcy, exercised his equity jurisdiction, and gave to each order the operation of an injunction, without the expense of a bill, whereby the joint creditor was restrained from coming on the separate fund until, in the final adjustment of the co-partnership and individual accounts, equity should determine what portion of the separate funds should be allotted to the joint creditor. And he says, that the joint creditors are in the situation of a person having two funds. The court will not allow him to attach himself to one fund, to the prejudice of those who have no other, and *to neglect the other fund.* He has the law open to him, but if he comes to claim a distribution, the first consideration is, what is that fund from which he seeks it? It is the separate estate which is particularly attached to the separate creditors. Upon the supposition there is a joint estate, the answer is, apply yourself to that, you have a right to come upon it. The separate creditors have not. Therefore do not affect the fund attached to them, till you have obtained what you can get from the joint fund. Thus it would appear that the ancient order of distribution was restored with this modification, that the joint creditors might prove, but could not, as before, receive dividends without the

further order of the chancellor, which should be made after the settlement of accounts, which were directed to be kept, as be-fore, separate. This important principle also seems distinctly to be set up by this decision, that where there are *no joint ef-fects,* and no solvent partner, that the joint creditors might be permitted to come in with the separate creditors, a doctrine which appears to have been first recognized by Lord *Thurlow,* in *Ex parte Hayden,* 1 *Bro. Ch. Rep.* 453, for before that period it has been seen that they could only come upon the sur-plus. This doctrine Lord *Eldon* has uniformly adhered to, although it will be found that he repeatedly complains of it, as a rule producing some inconveniencies, and liable to several objections, as will be seen by a reference to *Ex parte Pinker-ton,* 6 *Ves.* 813, *(note.) Ex parte Kensington,* 14 *Ves.* 447. *Ex parte Kendal,* 17 *Ves.* 521. *Ex parte Abell,* 4 *Ves.* 837. In the case of *Ex parte Kensington,* the joint creditors were forbid-receiving dividends with the separate creditors, on the ground that there was one *solvent partner,* although there was *no joint estate.* That the petitioner would have been allowed had the partner been bankrupt, is the necessary inference from the case; and in the former case the joint creditors were per-mitted to come in where there were no joint effects, upon the ground that the solvent partner was abroad, and that therefore the difficulty was increased in resorting to him.

Such is a succinct history of the law upon this subject, and the modern doctrine has been summarily stated by *Eden,* in his notes to *Ex parte Hodgson,* 2 *Bro. Ch. Rep.* 5, by *Vesey* in *Ex parte Taitt,* in his 16th vol. 194, *(n,)* and also by *Maddock,* in the 2d volume of his treatise on the principles and practice of the Court of Chancery, 463. They all unite in saying, (and they are fully supported by the authorities cited by them respectively,) "that the joint creditor may prove un-der a separate commission, for the purpose of assenting to, or dissenting from, the commission, or of going against the sur-plus after the satisfaction of the separate debts, not to vote on the choice of assignees, or receive dividends with the separate creditors, (except a joint creditor who is a petitioning creditor under the commission,) or where there are *no joint effects,* or no solvent partner, or no separate debts, or the joint creditors

will pay twenty shillings in the pound to the separate credi-
tors."

The case of *Gray vs. Chiswell*, 9 *Ves.* 124, as it is strongly
illustrative of the above doctrines, and was a case, not in bank-
ruptcy but in equity, will be particularly adverted to. A bill
was filed by the creditors of *Cook* against the heir and execu-
trix of *Chiswell*, claiming to come upon the real estate of *Chis-
well*, for the amount of their debts, as the personal estate had
been absorbed by specialty creditors. *Chiswell* had been a
partner of *Nantes; Nantes* had survived him, and had become
bankrupt. The joint creditors of *Nantes* and *Chiswell* proved
their claims before the master. The joint estate was insolvent,
being only able to *pay an inconsiderable dividend*, and the
sum proposed to be raised by a sale or mortgage of *Chiswell's*
real estate, was not more than sufficient to pay the separate cre-
ditors. A contest arose between the joint and separate credi-
tors, the former insisting on their right to come in *pari passu*
with the separate creditors, upon this fund, thus proposed to be
raised out of his separate estate. But the Chancellor (Lord
*Eldon,)* refused to permit them, upon the ground that in bank-
ruptcy it could not be done, and that the accidental death of
*Chiswell* ought not to put the joint creditors in a better situa-
tion than they would have been, had he lived and become bank-
rupt. If there *be any estate* for distribution among the joint
creditors, although the surviving partner is bankrupt, they are
not, in bankruptcy, permitted to come in with the separate cre-
ditors. The chancellor, therefore here, as in bankruptcy,
would not permit the joint creditors, who had effectuated their
claims under the commission against *Nantes*, although they had
received but an inconsiderable dividend, to come in *pari passu*
with the separate creditors. There was here *some* joint es-
tate, and then the general rule applied, that each species of cre-
ditor must be satisfied out of the fund to which his debt parti-
cularly attaches itself; and the rule has been carried to this ex-
tent, that if there be a joint fund *of any, even the smallest
description* which is capable of being realized, the rule *is in-
flexible*, and the joint creditors will not be permitted to re-
ceive dividends from the separate estate. *Ex parte Peake,
Gow. on Part.* 408. Thus we perceive from the case of *Gray*

*vs. Chiswell,* that the rule, which is applied in bankruptcy, is extended to cases in equity.

It is difficult to say upon what the rule in equity and in bankruptcy, with the modification above stated, is founded. The joint estate is benefited to the extent of every credit which is given to the firm, and so is the separate estate in the same manner enlarged by the debts it may create with any individual, and there would be unquestionably a clear equity in confining the creditors to each estate respectively, which has thus been benefited by their transactions. So far the rule is sensible and intelligible; and although at law the joint creditors may pursue both the joint and separate estate, to the extent of each, for the satisfaction of their joint demands, which are at law considered both joint and several, without the possibility of the interposition of any restraining power of a court of equity; yet when, by the death of one of the parties, the legal right survives against the surviving partner, and is extinguished against the deceased partner, a court of equity will give to the separate creditors all the advantages thus by accident thrown upon them, and will not, by adopting the rigorous rule of the law merchant, thereby injure and prejudice the separate creditor, upon whom, viewed in connexion with the separate fund, it always looks upon as meritorious and entitled in the distribution of assets to the preference. But although a court of equity, as against the separate creditors, will not adopt the law merchant, which considers the contract both joint and several; yet whatever doubts have heretofore been entertained on the subject, where the claims of these joint creditors do not come into conflict with the separate creditors, but only with the interests of the representatives of the deceased partner, it is now undeniably settled, that equity will, as against such representatives, decree to joint creditors a satisfaction of their claims, by considering them, as they are considered at law, both joint and several.

But although these distinctions are built on the solid foundations of reason and justice, it is not altogether so easy to perceive, why, when there is no joint fund, and *no* solvent partner, (by no solvent partner is meant bankrupt partner,) *the joint creditor* should thereby acquire the equitable right of coming

in with the separate creditors *pari passu,* upon a fund in no manner benefited by the creation of his debt.    Such, however, is the settled and established rule, as we are enabled to collect it both in bankruptcy and in equity; and according to this rule the complainant could not, in this case, be permitted to seek indemnity for his claim, from the separate estate *pari passu* with separate creditors, as it is a conceded fact in the cause, that there are joint funds, although very inconsiderable, and greatly insufficient to pay the debt of the complainant.

But were not this the fact, this court would have no difficulty in saying, that the complainant should be postponed to the separate creditors; and that whether there was any joint estate or not, he should not be permitted to divide with the separate creditors a fund insufficient to pay them.    We are, therefore, disposed to adopt the ancient rule as more consonant to equity and justice, that the joint creditors can only look to the surplus, after the payment of the separate debts; and on the other hand, that the separate creditors can only seek indemnity from the surplus of the joint fund after the satisfaction of the joint creditors.

It is believed that the case of *Tucker vs. Oxley,* 5 *Cranch,* 34, somewhat militates against the views which we have taken of the *English* law upon this subject, and it has been pressed upon the court, by the appellant's counsel, as containing principles decisive of this case.    It was there determined, that under the bankrupt law of the *United States,* (and the bankrupt law of *England* and that of the *United States,* so far as connected with the matter there decided, are nearly identical,) that a joint debt may be set off against the separate claim of the assignee of one of the partners, but that such set-off could not be made at law, independent of the bankrupt system.    The particular decision in this case, it is not material perhaps to examine, because it was a case at law, and the relations of the parties were materially different.    It would perhaps be sufficient to say, that the Supreme Court, although they conceive a legal right exists in the joint creditors to prove and receive dividends out of the separate estate, explicitly admit, that such right it is competent for a court of equity to restrain, and to compel the exercise of such right in such manner

as not to prejudice or to do injustice to others. We might, in any view of the cause before us, dismiss, without further observation, the case of *Tucker vs. Oxley;* but we cannot forbear remarking, that the case upon which the court there build their opinion, that a legal right universally exists in the joint creditors upon a separate commission to come on the separate estate *pari passu* with the separate creditors, is the case where a joint creditor is the petitioning creditor, and is an excepted case from the general rule. *( Vide* argument of Sir *Samuel Romily* in *Ex parte Ackerman,* 14 *Ves.* 604, and the authorities referred to by *Vesey.) Maddox* in his 1st vol. 463, considers this *a singular* exception to the general rule; and the reason assigned for the adoption of the exception is, that the *joint creditor, having petitioned for the commission of bankruptcy,* it might be considered in the nature of a modified execution, taken out by him, as well for his own benefit as for that of the separate creditors; and that it would be against all equity to permit the separate creditors to prevent the joint creditor from reaping the fruits of an execution taken out for his and their mutual benefit.

Thus, without encroaching upon any decided case, and acting in *strict* conformity to the settled doctrines, it must be determined, that although *Bennett* is a certificated insolvent, yet as the separate estate of *Dashiell* is insufficient to pay his individual debts, the complainant, a joint creditor of *Bennett* and *Dashiell,* cannot be permitted to come in *pari passu* with the separate creditors of *Dashiell.*

DECREE AFFIRMED.