Moses W. Leib *vs.* Ann E. Stribling, Adm'x of Cornelius Stribling, and Thomas R. Clendinen and Joseph P. Merryman, and others.

*Marshalling of Securities—Superior Equity—Priority of a Mortgage over a Mechanic's Lien Claim in the Distribution of the Proceeds from the Sale of Real Estate in Equity— Mortgage of an Equitable Interest—Extent of a Mechanic's Lien—Fees allowed Solicitors.*

Where a creditor has a lien upon two funds for the payment of his debt, and a subsequent creditor has a lien upon one fund only, the doctrine of marshalling of securities, by which the creditor having a lien upon two funds will be compelled to resort to that fund which is not common to both, is not founded on contract, but rests solely upon equitable principles. This equity will not be enforced against intervening liens, having a superior equity.

S. leased from V. four lots of ground and at the same time obtained from him a loan for improving the property. To secure the payment of this loan S. mortgaged to V. his leasehold interest in the lots. V. and wife then agreed with S. that upon the erection by him of four dwellings on said lots, and the payment of the loan, they would convey to S. in fee a lot of ground. S. began to erect the dwellings, and before they were completed, he mortgaged his interest in the fee simple lot to C. The four dwellings were afterwards subjected to and sold under mechanics' lien claims, and after payment of V's mortgage the balance was insufficient to pay these claims. S. died, and the fee simple lot was sold under a general creditors' bill. The appellant, assignee of a mechanic's lien claim, claimed a priority of payment in the distribution of the proceeds from the sale of this lot over the mortgage claim of C. Held:

1st. That C. was a purchaser for a valuable consideration without notice of the appellant's equity, and it would be unjust to subrogate the mechanics' lien creditors to V's lien in the fee simple lot as against the mortgage of C.

2nd. That S. had an equitable interest which he could convey by mortgage.

3rd. That as the appellant had no interest in the proceeds from the sale of the fee simple lot, and C. not having excepted to fees allowed solicitors in the cause, he could not object to the audit on this ground.

The provision of the Code, that a mechanic's lien relates back to the commencement of the building furnishes no reason why a Court of equity should marshal securities to the prejudice of a *bona fide* purchaser of other property upon which the lien did not operate and of which he had no notice.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The appeal was taken from the orders (GILMOR, J.,) of the 13th February, 1878, and of the 13th March, 1878, mentioned in the opinion. By the order of the 13th March, 1878, the petition of the appellant, so far as it sought priority for the appellant's claim, over the mortgage claim of the appellee, Stribling, was dismissed, and the auditor directed to state an account, allowing the proceeds of sale in the hands of Thomas R. Clendinen, and Joseph P. Merryman, the trustees, who had sold the property on Vincent alley under the general creditors' bill mentioned in the opinion, to the payment of the mortgage claim of Stribling. By the order of the 13th February, certain fees were allowed Messrs. Clendinen and Merryman out of the fund, for professional services rendered by them in this cause, and in suits connected with it, and the exceptions of the appellant to the auditor's report in that regard were overruled.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER, ALVEY and ROBINSON, J., for the appellees, and submitted for the appellant.

*James H. Gable,* for the appellant.

*C. D. Barnitz,* for the appellee, Ann E. Stribling, administratrix.

*Thomas R. Clendinen,* for the other appellees.

ROBINSON, J. delivered the opinion of the Court.

The late Ferdinand Stansbury leased from George R. Vickers, four lots of ground on North Gilmor street, in Baltimore City, and at the same time borrowed of him twelve hundred dollars for the purpose of improving said property. To secure the payment of this loan, Stansbury mortgaged his leasehold interest in the four lots.

Vickers and wife then entered into a written agreement with Stansbury, stipulating that upon the erection by him of four dwelling houses on said lots, and upon the payment of the twelve hundred dollars thus loaned to him, they would convey in fee simple, a lot of ground on the east side of Vincent alley.

The four houses on Gilmor street were subsequently sold under proceedings instituted by mechanic lien creditors, and after the payment of Vickers' mortgage, the balance of the proceeds was insufficient to pay the mechanic lien claims.

Stansbury having died without leaving personal property enough to pay his debts, his interest in the *Vincent alley lot* was sold under a general creditors' bill.

The appellant, assignee of a mechanic's lien claim contends, that inasmuch as Vickers had a lien both upon the Gilmor street houses, and the Vincent alley lot, for the payment of the twelve hundred dollars due him, and the said debt having been paid entirely out of the proceeds from the Gilmor street houses, the mechanic lien creditors are entitled to be subrogated to Vickers' lien on the Vincent alley lot, and are therefore entitled to a *priority* in the distribution of the proceeds arising from the sale of said lot.

It appears however, that before the mechanic lien claims were filed against the Gilmor street property, Stansbury mortgaged his interest in the Vincent alley lot, to one

Cornelius Stribling, to secure the payment of eight hundred dollars, and the appellees contend that this mortgage is entitled to a priority over the claim of the appellant.

Where a creditor has a lien upon two funds for the payment of his debt, and a subsequent creditor has a lien upon one fund only, the doctrine of *marshalling of securities*, by which the creditor having a lien upon two funds will be compelled to resort to that fund which is not common to both, is not founded on contract, but rests solely upon equitable principles.

In such cases, no injustice is done to the creditor having liens upon two funds, because in any event his debt is paid; whereas by the application of the doctrine, the debt of the subsequent creditor may also be paid.

To the end therefore, that both debts may be paid, it is but just to compel the creditor having a lien upon two funds, to resort to that upon which a subsequent creditor has no lien; or if the prior creditor has been paid out of a fund not common to both, to subrogate the subsequent lien creditor, to the rights of the prior creditor, as against the fund to which such subsequent creditor had no lien.

But this equity will not be enforced against intervening liens having a superior equity. Thus in *Averall vs. Wade, Lloyd & Gould's Rep.*, 252, where a party seized of several estates, and being indebted by judgment, settled one of the estates upon his son Thomas, and subsequently acknowledged other judgments, Lord Chancellor SUGDEN, held that the subsequent judgment creditors had no right to make the settled estates contribute.

Now in this case, Stansbury mortgaged his interest in the Vincent alley lot to Stribling, before any proceedings were instituted by the mechanic lien creditors against the Gilmor street houses, Stribling was therefore a purchaser for a valuable consideration without notice of the appellant's equity, and it would be manifestly unjust under such circumstances, to subrogate the mechanic lien credi-

tors to Vickers' lien on the Vincent alley property as against the Stribling mortgage.

But it was argued that although the mortgage was prior in point of time to the filing of the mechanics' lien claims, yet such claims when filed became liens on the Gilmor street houses from the time the erection of the houses began, and that the houses were in fact begun before the mortgage was executed.

Under the Code it is true, the lien relates back to the commencement of the building. But this is founded upon statutory law, in order to protect the material man against liens and claims against the building, subsequent to its commencement. But it furnishes no reason why a Court of equity should marshal securities to the prejudice of a *bona fide* purchaser of other property, upon which the lien did not operate, and of which he had no notice. *Bugden vs. Bignold,* 2 *Y. & C. C. C.,* 37; *Gibson vs. Seagrim,* 20 *Beav.,* 618; *Stronge vs. Hawks,* 4 *De G. & J.,* 632; *Miller vs. Jacobs,* 3 *Watts,* 437; *McGinnis' Appeal,* 4 *Harris,* 445; *Reynolds vs. Tooker,* 18 *Wend.,* 591; *Orris vs. Newell,* 17 *Con.,* 97; *Mechanics' B. & Loan Ass'n,* 1 *McCarter,* 219; 4 *Grattan,* 47.

It was also contended that Stansbury had no interest in the *Vincent alley lot,* such as would pass under mortgage. This question, however, we consider settled by *Alderson vs. Ames & Day,* 6 *Md.,* 52.

He was entitled to a conveyance of the property upon the erection of the houses on Gilmor street, and the payment of the loan of twelve hundred dollars. The houses were begun and in the course of being erected when the mortgage of Stribling was executed, Stansbury had therefore an equitable interest, which he could convey by mortgage.

No exceptions are filed by the representative of Stribling to the fees allowed by the auditor to Thomas R. Clendinen and Joseph P. Merryman for professional services.

:. As the proceeds from the Vincent alley lot are to be applied to the payment of the Stribling mortgage, it is very clear the appellant has no right to object to the audit on this ground.

The orders of the Court below passed on the 13th Feb., 1878, and the 13th March, 1878, will therefore be affirmed.

*Orders affirmed.*