In the Matter of the Assignment of PRICE, McCORMICK AND COMPANY to WILLIAM J. CURTIS, Appellant and Respondent.

In the Matter of the Claim of GEORGE CROCKER, Respondent and Appellant.

GENERAL ASSIGNMENT — WHEN CLAIM CREATED AGAINST ESTATE AFTER ASSIGNMENT SHOULD BE PAID IN FULL. Where a customer of a firm of stockbrokers owed it a large sum of money upon certain securities being carried for him on a margin, and after a general assignment of the firm tendered payment of his debt to the assignee and demanded the

securities, which was refused, for the reason that they with others had been pledged by the firm as collateral to various loans made to it, and subsequently, at the request and authorization of the assignee, the customer, for the purpose of redeeming his securities, advanced not only the amount of his debt, but a larger sum, *i. e.*, the market price on the day of redemption, which to that extent enabled the assignee to redeem and release the other securities which were primarily liable, the customer is entitled to be paid in full, and in preference to the general creditors, for the amount advanced over and above his debt and which operated to increase the assets in the hands of the assignee, they having no claim upon the fund, for the reason that it was not realized from any of the assigned property.

*Matter of Price, McCormick & Co.*, 69 App. Div. 37, reversed.

(Argued March 26, 1902; decided April 15, 1902.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the first judicial department, made February 7, 1902, which reversed an order of Special Term and directed the payment to the petitioner *pro rata* with other creditors of Price, McCormick & Company of the claim set forth in the petition.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Eugene D. Hawkins* and *William Rumsey* for claimant, appellant and respondent. The payments made by Mr. Crocker to the sub-pledgees of Price, McCormick & Co. to take up his stocks were not in any sense a purchase by him of the stocks. (*Markham* v. *Jaudon*, 41 N. Y. 235; *Baker* v. *Drake*, 66 N. Y. 518; *Douglas* v. *Carpenter*, 17 App. Div. 329; *Chaplin* v. *Brooks*, 31 N. Y. 75; *Gould* v. *F. L. & T. Co.*, 23 Hun, 322; *Harmony* v. *Bingham*, 12 N. Y. 99, 111, 117; *Stanton* v. *Jerome*, 54 N. Y. 480.) Mr. Crocker occupies the position of a surety, with all the rights, legal and equitable, incident to that relation. (*Bank of Albion* v. *Burns*, 46 N. Y. 170, 175; *Barnes* v. *Mott*, 64 N. Y. 397, 401; *Burnap* v. *Bank of Potsdam*, 96 N. Y. 125; *Smith* v. *Savin*, 141 N. Y. 315, 325; *Gould* v. *Central Trust Co.*, 6 Abb. [N. C.] 381; *Gahn* v. *Niemcewicz*, 11 Wend. 324; *Robinson* v. *Gee*, 1 Ves. Sr. 251.) So far as the firm of

Price, McCormick & Co. is concerned, Mr. Crocker was entitled to the possession of his stocks on payment to them of the amount of his debt only. (18 Am. & Eng. Ency. of Law [1st ed.], 721, 722; *Wilson* v. *Little*, 2 N. Y. 443; *Earle* v. *N. Y. L. Ins.. Co.*, 7 Daly, 303.) Mr. Crocker was entitled to have the securities, other than his own which had been deposited with the principal creditor as collateral for the debt of Price, McCormick & Co. first sold before his stocks could be resorted to for the payment of the debt. (Brandt on Guar. & Surety, § 237; *Niemcewicz* v. *Gahn*, 3 Paige, 614; *Vartie* v. *Underwood*, 18 Barb. 561; *Loomer* v. *Wheelwright*, 3 Sandf. Ch. 135; *E. C. S. Bank* v. *Roop*, 80 N. Y. 591; *Farwell* v. *I., etc., Bank*, 90 N. Y. 483; Colebrook on Coll. Sec. § 210.) That Mr. Crocker chose to redeem his securities before compelling the creditors to resort to those owned by Price, McCormick & Co., does not deprive him of his right to have the securities marshalled in his favor. (*Matter of Bonner*, 8 Daly, 75; *Farwell* v. *I., etc., Bank*, 90 N. Y. 483.) The fact that the surplus was paid over to the assignee does not affect Mr. Crocker's right to follow it in his hands. (*Stevens* v. *Bell*, 6 Mass. 339; *Galigher* v. *Jones*, 129 U. S. 193; *Markham* v. *Jaudon*, 41 N. Y. 235; *People* v. *Bank of Dansville*, 39 Hun, 187; *Holmes* v. *Gilman*, 138 N. Y. 369; *Van Alen* v. *A. Nat. Bank*, 52 N. Y. 1–4; *People* v. *City Bank of Rochester*, 96 N. Y. 32; *Knatchbull* v. *Hallett*, 13 Ch. Div. 696; *S. W. Co.* v. *Nichols*, 41 Hun, 261.) There is nothing in this case which precludes Mr. Crocker from insisting upon being paid the whole $62,350.51 out of this surplus. (*Chapman* v. *Brooks*, 31 N. Y. 75; *Matter of Pierson*, 19 App. Div. 478; *E. Foundry* v. *Hersee*, 33 Hun, 169; 103 N. Y. 25.) This claim to the surplus is not in opposition to the assignment, but may be adjudicated under it. (*Matter of Bonner*, 8 Daly, 75; *Matter of Smyth*, 2 How. Pr. [N. S.] 431.) By filing proof of claim Mr. Crocker did not waive his right to be paid in full. (*Broadbent* v. *Barlow*, 3 De G., F. & J. 579; *Matter of Bonner*, 8 Daly, 75; *Mills* v. *Parkhurst*, 126 N. Y. 89; *Morris* v. *Rexford*, 18 N. Y. 552;

*Kennedy* v. *Thorp*, 51 N. Y. 174; *Bank of Beloit* v. *Beale*, 34 N. Y. 473; *Sanger* v. *Wood*, 3 Johns. Ch. 416; *Conrow* v. *Little*, 115 N. Y. 394; *Sternfeld* v. *Simonson*, 44 Hun, 429; Bish. on Insolv. Debtors [3d ed.], §§ 250, 251; Head. on Assign. 182; *Burrows* v. *Alter*, 7 Mo. 424.) If Mr. Crocker is not entitled to receive the full amount of the surplus arising from the redemption of his stocks, namely, $62,350.51, he certainly is entitled to have that sum regarded as an advance of money for the partnership and to receive the dividend *pro rata* with the other creditors under section 37 of the Partnership Law (L. 1897, ch. 420). Mr. Crocker, if not entitled to the whole surplus, is at least entitled to share *pro rata* with the other creditors in respect of that surplus, because at the time this advance was made he was no longer a special partner of the firm. (*Welles* v. *March*, 30 N. Y. 344; *Hayes* v. *Heyer*, 35 N. Y. 326.)

*Francis D. Pollak* and *Alfred Jaretzki* for assignee, respondent and appellant. Mr. Crocker, at the time of the assignment of Price, McCormick & Co. and after the refusal of his tender, had no claim on which he could compete with the general creditors of his firm in dividing its assets. Public policy and positive law subordinated his claim as it stood at the time of his tender to the like claims of strangers to his firm. (L. 1857, ch. 414.) Mr. Crocker's right to have his claim paid *pro rata* with the claims of other creditors cannot be sustained. His transactions with the banks originated no new claim in his favor against the firm or the assigned estate. They served only to liquidate his existing claim and left him still with a claim based on his transactions with the partnership before the assignment. He was still a special partner of Price, McCormick & Co. at the time of his transactions with the banks. The general assignment did not, and under the provisions of section 42 of the Partnership Law, could not, dissolve the partnership. (L. 1897, ch. 420.) Mr. Crocker's right to share *pro rata* with other creditors cannot be sustained on the theory of subrogation. (*Acer* v. *Hotchkiss*, 97

N. Y. 395.) Mr. Crocker's petition is purely a petition to share on the same footing with other creditors in the general assets belonging to the assigned estate. It cannot be sustained as a petition, independent of the assignment, to recover property or the proceeds of property belonging to Mr. Crocker as owner. (*Le Marchant* v. *Moore*, 150 N. Y. 209; *Dietz* v. *Field*, 10 App. Div. 425; *Droege* v. *A. & O. Mfg. Co.*, 163 N. Y. 466.) Mr. Crocker's claim cannot be sustained on any theory of marshaling of assets. (*Le Marchant* v. *Moore*, 150 N. Y. 209; *Dietz* v. *Miller*, 10 App. Div. 425; *Droege* v. *A. & O. Mfg. Co.*, 163 N. Y. 466.)

O'BRIEN, J. The order from which this appeal is taken determined the rights of a claimant upon the fund in the hands of an assignee under a general assignment for the benefit of creditors.

On the 24th of May, 1900, the firm of Price, McCormick & Co., stock brokers, made an assignment of all the property of the firm to the assignee in this case, in trust, for the benefit of creditors pursuant to the statute. The assignee qualified and entered upon the duties of the trust and thereafter advertised for creditors of the firm, requiring them to present their claims. On the 12th of July, 1900, before the day specified in the notice to present claims, the petitioner, George Crocker, claiming to be a general creditor of the firm, presented to and filed with the assignee a sworn claim amounting to $62,286.73, which the assignee allowed as a just and proper claim against the estate in his hands. Subsequently, the assignee declared and paid a dividend of fifty per cent upon the claims of the general creditors of the firm other than the petitioner, and refused to pay to him any part of the dividend or to make any payment to him on account of his claim against the firm.

It appears that the claimant was a special partner in the firm at the time of its failure and that he had contributed $500,000 as special capital, but none of the claims and demands presented to the assignee are on account of his special capital, but arose out of certain dealings between the

claimant and the firm, which will be referred to hereafter. It appears and has been found that the claimant, on the 24th of May, 1900, at the time of the assignment, had a speculative account with the firm of which he was a special partner, for the purchase of stocks and other securities and he was then indebted to the firm on account in the sum of $114,811.99. Upon the payment thereof to the firm the claimant was entitled to receive two thousand six hundred shares of stock of various corporations which had been purchased for his account. In addition thereto the firm held seven hundred and twenty-five shares of the common stock of a railroad. This stock, it appears, belonged absolutely to the claimant and he had delivered it to the firm, without payment, to be held for his account and subject to his instructions. The claimant, at the time of the assignment, it appears, was in Europe, and upon being notified of the failure and the assignment of the firm, stated that he was ready and willing and offered to pay the balance due by him upon his account and demanded the return of all the shares of stock held for his account, but was informed by the assignee that all the stocks had been used by the firm as collateral for loans made to it by divers parties, and the assignee refused to accept the tender of the balance due to the firm or to surrender the shares of stock, the same not being then in his possession or under his control. Sometime thereafter, by agreement between the claimant and the assignee, the latter gave written consents addressed to the various persons with whom the claimant's shares of stock were pledged, authorizing such persons to deliver said shares to him on his paying to them the market price of such stock on that date. The claimant thereupon, for the purpose of releasing his shares of stock from the lien and possession of the parties with whom the same had been placed, paid to them the sum of $177,162.50, or $62,350.51 in excess of the amount due from him to the firm. The total sum due from the firm to the various parties with whom the claimant's shares were pledged was $1,750,000, and the collateral securities pledged with them were of the aggregate value of $2,352,855.73, being largely in excess of

the amount of the indebtedness of the firm to the various parties above mentioned. The excess or surplus, composed in part of money and in part of securities, amounting to $602,855.73 was returned by these various parties to the assignee and the sums paid by the claimant for the redemption or release of his stock were credited on account of the indebtedness due from the firm and in reduction thereof *pro tanto.* The petitioner's claim is for the difference between the amount due by him to the firm on his account with them and the sum that he paid in order to obtain possession of his securities.

It does not appear affirmatively that the other securities pledged to secure the total debt of $1,750,000 and which aggregated in value $2,352,855.73, belonged to the firm of brokers as their own property, but inasmuch as the contrary does not appear the fair presumption must be that the firm pledged their own property and not that which belonged to their customers. It is possible that this presumption may be changed, but we must take the case as we find it upon the record. We agree with the learned court below that section 37 of the Partnership Law has no application to this case. Under that section a special partner, such as this claimant was, is not permitted to make any claim upon the assets of the firm on account of his capital until all the general creditors have first been paid in full, but, in so far as he has loaned or advanced money to the special partnership in the transaction of its business, his claim stands upon the same footing as that of all other general creditors.

We do not think that the rights of the claimant depend entirely upon his status as a creditor of the firm. At the time of the assignment he had no debt whatever against the firm, but owed the firm a large sum of money on the speculative account, which he subsequently paid in full, and besides paid an additional sum of $62,350.51. Nor do we think that it is important to inquire whether, under the circumstances of the case, he became subrogated to the rights of the creditors of the firm, that is to say, the bankers who held the stock in

pledge. It is not important, in our view, to go into the question of subrogation at all. The claimant's claim never existed as against the firm, but grows out of a transaction which took place subsequent to the assignment between himself and the assignee. The assignee, in writing, authorized, and in one of the letters requested, the claimant to advance the money for the redemption and release of his stock, and he did advance, not the amount of the debt which he owed the firm but much more, that is to say, the market price of the stock on the day of the redemption, which amounted, as we have already shown, to over $62,000 more than the debt. To the extent of the money that the claimant paid over and above his debt it operated to release the other securities which belonged to the firm, and which were primarily liable for the whole debt aside from that due from the claimant himself. Therefore, the funds in the hands of the assignee were enhanced by the payment on the part of the claimant of his own money to the extent of over $62,000.

The question is whether this part of the fund in the hands of the assignee belongs to the claimant or to the general creditors. If, in equity, the claimant has the superior right to be repaid that amount, then he should be paid in full. The general creditors have no claim upon a fund which does not arise from the property of the firm but from the money of the claimant. It will be seen that the transaction was, in effect, to the extent of the sum paid by the claimant over and above his debt an advancement of money to the assignee, which enabled the latter to redeem and release the other securities which were primarily liable; and if this is the true situation, then the general creditors have no claim upon that part of the fund superior or even equal to that of the claimant. In substance and legal effect it is the same as if the assignee had borrowed from the claimant $62,350.51 to apply upon the debt for which the other securities were pledged and thus operated to release them *pro tanto*. A court of equity, in the determination of such questions, will always look at the substance rather than the form of the transaction, and viewing it

in that way the agreement between the assignee and the claimant was, in substance, that the latter should advance a certain sum of money over and above his debt to the firm, which operated to diminish the debt for which the other securities, which were primarily liable, had been pledged. The assignee, in this way, procured the claimant to advance money to be used in the extinguishment of the lien upon the other property, and to that extent the fund in his hands was increased in the course of his administration of the trust, and there is no reason why the assignee should not repay the amount in full as in the case of any other item of expense in the course of administration.

In this view of the case it is not important to determine whether the claimant made the payment to the bankers voluntarily or involuntarily. It is enough that he made it with the consent and at the request of the assignee and by a mutual arrangement between themselves. The form of the petition which the claimant presented to the court as the foundation of his claim is not to be viewed exactly in the light of a pleading. It is broad enough in the statement of facts and in the prayer to warrant any relief which was justified by the facts established and found. The facts were sufficiently disclosed by the petition and are undisputed in the record. It is of no consequence whether the claimant asked to be repaid the money on the principle of subrogation or otherwise. In such cases when the facts appear it is the duty of the court to determine the controversy according to the principles of equity and justice. The real question is whether the agreement made between the claimant and the assignee, in pursuance of which the former paid for the benefit of the estate a large sum of money over and above his own debt, does not entitle the claimant, in equity, to be paid in full for the amount so advanced by him and which operated to increase the assets in the hands of the assignee. In so far as these assets were increased by the money of the claimant it would seem to be clear that he has the prior right to be reimbursed. The general creditors, so far as the record discloses,

have no claim upon this part of the fund for the plain reason that it was not realized from any of the assigned property, but was virtually advanced to the assignee by the claimant. If it is material to determine whether the act of the claimant in making the payment was voluntary or otherwise there would seem to be no difficulty in reaching the conclusion that it was involuntary ; since, at the time that he redeemed the stock he was confronted with this situation : The stock had been pledged without his consent by the brokers to secure debts which they owed generally to various bankers who had advanced them money. These bankers refused to deliver the stock to the claimant upon tender and payment of the debt which he owed to the brokers, but insisted upon holding it unless the market price on that day was paid. The claimant submitted to this condition, and under stress of this situation he contributed over sixty-two thousand dollars in discharge of a lien upon other property that passed to the assignee, and it does not appear from the record now before us that the general creditors had any equitable claim to this part of the fund.

But the case was not tried or considered in the courts below upon this theory, and it may be that the claimant himself rested his rights upon some other view. However that may be, we think that the present record is not in such a condition as would enable this court to render a final judgment, and, therefore, there should be a new trial. As the case now stands, we think that the claimant should have been paid in full and that he is entitled to have the amount advanced by him to the bankers over and above the debt which he owed repaid to him by the assignee. The dividend, if received by the claimant, should apply upon his claim, and since the facts upon which our conclusion is based may be changed, the order of the Appellate Division confirming the report of the referee should be reversed and the case remitted to the Special Term for a new trial, with costs to the claimant to abide the event.

PARKER, Ch. J.; BARTLETT, CULLEN and WERNER, JJ., concur; GRAY and HAIGHT, JJ., dissent.

Ordered accordingly.