CATHERINE G. RECORDS, Administratrix of
George J. Records, Deceased, *vs.*
HOLLINS McKIM.

*Bankers and brokers; insolvency of; rehypothecation of cus-*
*tomers' securities; marshalling of assets; rights of the own-*
*ers of securities; subrogation. Partners; insolvency;*
*individual and joint property; creditors'*
*rights; claims ex delicto.*

A bank has the right to apply deposits to the payment of
debts due it by the depositor. p. 305

An insolvent firm of bankers and brokers had deposits with
a bank, to which the firm was also a debtor for a balance due
upon a loan secured by collateral; among the collateral so
deposited were securities of their customers which the firm
had rehypothecated. *Held,* that the owners of the rehypothe-
cated collateral were entitled to have the insolvent firm's funds
and securities held by the bank marshalled and applied in
such a way as to release their property, as far as practicable,
without injury to the bank's interest. p. 306

The firm's deposits in the bank should have been applied to
the bank's debt, and the collateral released, to be returned to
the owners who should redeem. p. 305

The right of the owners of the re-hypothecated securities
against the insolvent firm was not changed by the fact of the
receivership. p. 306

Where a bank released and paid to the receiver the deposits
of the insolvent firm, and, for the repayment of the balance
of the loan due it, elected to depend upon securities which
had been deposited as collateral therefor and which were
subsequently found to have been composed of securities of
customers of the insolvent firm which had rehypothecated
the same, the owners of the collateral were entitled to be
subrogated to the position of the bank. p. 306

Where, in settling the affairs of an insolvent firm, it appears from the record that there is no joint property, but that all the assets belong to one partner, the ordinary rule for the distribution of the joint and separate estates of partners among the firm and individual creditors does not apply.

p. 304

Where there are no joint assets, and where the individual estate of one partner is the only one to which any creditor can resort, the individual and firm creditors share ratably in the fund.          p. 304

And the fact that a claim of a creditor arises *ex delicto* gives it no right of priority.          p. 304

*Decided April 4th, 1911.*

Appeal from Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER and URNER, JJ.

*George A. Solter* (with whom were *Albert S. J. Owens* and *Bansemer & Solter,* on the brief), for the appellant.

*William S. Bryan, Jr.,* for the appellee.

URNER, J., delivered the opinion of the Court.

The appellant's intestate, George J. Records, was a customer of McKim & Company, a partnership engaged in the banking and brokerage business in Baltimore. He deposited with the firm certain securities as collateral for advances by it in the purchase of stock and bonds on his account. A receiver was subsequently appointed for the partnership. This action was taken on a bill filed by a creditor and by one of the members of the firm. The only defendant was Hollins McKim, who was alleged in the bill to be engaged in business as a banker and broker under the name of McKim & Company. It was averred that the plaintiff part-

ner, while a member of the firm and contributing his services to the business, had never contributed or agreed to furnish any capital, and that the assets of the firm were the property of Hollins McKim and consisted in part of cash, securities and loans to customers, and in a large measure of real estate upon some of which it was difficult to realize readily either by sale or mortgage. The bill further stated that owing to withdrawals of deposits and other causes the cash on hand and other available funds had been reduced to a point below the requirements of the banking business, and demands had been made by customers which could not be immediately met, but if time were obtained in which to realize upon the real estate and other property of Hollins McKim, the business could be wound up and the claims of creditors settled. There were other allegations as to the necessity for a receivership, and there was a prayer for that relief. The defendant immediately filed a consent answer, and an order was thereupon passed by the Court below appointing a receiver with authority to take possession of the property and assets of the partnership and of its members and to pay the proceeds under the direction of the Court to the creditors or other persons entitled.

The receiver came into possession of certain stock and bonds purchased by the firm for Mr. Records, the appellant's intestate, and for which it had advanced $37,773.49. A sale of these securities and the collection of dividends on them produced the sum of $28,187.84, leaving an indebtedness of $9,441.97 due from Mr. Records to the receiver to which the collateral we have mentioned as having been deposited by him with the firm should have been applicable. It appeared, however, that this collateral, in connection with securities belonging to the firm and other customers, had been rehypothecated by McKim & Company with the Mercantile Trust Company and the National Bank of Baltimore for loans to the partnership, the proceeds of which were deposited to its credit in the last-named institution. Upon the application of Mr. Records permission was granted him by the Court

below to pay to the receiver the sum of $17,860.00, the amount ascertained to be the loaning value of his repledged collateral, with the understanding that the fund should be applied to the redemption of his securities from the pledgees. This arrangement was carried into effect, with the result that Mr. Records recovered his stock and bonds by the expenditure stated. Against this was chargeable his indebtedness of $9,441.97 to the firm, leaving a balance of $8,418.03 for which he is a creditor of the estate in the hands of the receiver. The questions we are to determine relate to certain claims of priority as to this indebtedness.

The order providing for the redemption of the rehypothecated securities of Mr. Records reserved to him "the right to file with the auditor his claim (to be thereafter passed upon by the Court) for preference over the general creditors of McKim & Company," and the claim was subsequently referred to the auditor with direction that he ascertain whether it was "entitled to a preference out of the general assets in the possession of the receiver or against any special fund or balance which may come into the hands of said receiver from the persons, firms or corporations" to whom the securities in question had been repledged.

The auditor has reported in two accounts funds or distribution aggregating $55,694.11, and it is stated by agreement that the estate yet to be accounted for amounts to approximately $75,000.00. It is recited in the auditor's report that all the funds distributed in the case are derived exclusively from the individual assets of Hollins McKim. In the accounts already filed the creditors are divided into five classes. The first includes those who are designated by the auditor as individual creditors of Hollins McKim. Their claims amount to only a few hundred dollars and are allowed in full. The second class embraces the depositors of the firm. These claims aggregate about $126,000.00. The third class includes creditors whose claims, the total of which is about $20,000.00, originated in the rehypothecation of collateral pledged with the firm to secure it for advances made

to customers in the purchase of stocks and bonds. In the case of claims belonging to this class there was no redemption of the securities, but they were sold by the institutions to which they had been pledged, and the customers were treated as creditors of the estate in the hands of the receiver to the extent of the difference between the selling values of their collateral and the amounts of their respective indebtedness to the firm. Class four comprises creditors in the situation of Mr. Records. The only difference between these and the creditors of class three is that the former advanced the necessary funds to secure the redemption and restoration of their repledged collateral, while the latter permitted their securities to be sold. In each instance the values represented by the sale or redemption constitute the basis of the creditors' claims. The total of the debts in the fourth class is about $26,000.00. The fifth and final class is made up of miscellaneous liabilities amounting to several hundred dollars.

After the claims of the first class had been given priority in the audit, all the other claims were placed on an equality in the distribution of the estate. Mr. Records and the other creditors of the fourth class excepted to the audit on the ground that their claims were not allowed preference over the general unsecured creditors of Hillins McKim and McKim & Company. The audits were ratified with the assent of the exceptants under a stipulation that the question of their right to preference be reserved for the future action of the Court, and that if their claim to priority should be sustained, they should be satisfied out of funds of the estate remaining for distribution. The exceptions of the appellant and one of the other creditors of the same class were subsequently heard and overruled by the Court and the order to that effect is the occasion for the present appeal.

The primary contention of the appellant is that the rehypothecation of the securities of her intestate by McKim & Company was a tort for which the members of the firm were *severally* as well as jointly liable, and that a claim growing

out of such a transaction is entitled to priority over ordinary joint contract debts of the firm in the distribution of the individual estate here under administration. It is insisted that a creditor whose claim originates in a tort of the firm may at his election prove in the first instance against either the joint assets of the partnership or the separate estimates of its members, and the familiar doctrine is invoked that the creditors of a firm are not permitted to share in the estate of a partner until the creditors of the latter are fully paid.

It does not seem to us necessary to enter into a discussion of the principles upon which this feature of the appellants claim of preference is founded because we do not find in the record before us a situation to which they can be properly applied. There is only one estate being administered, and that belongs exclusively to one of the parties. It is clearly shown by the pleadings and evidence that there was no joint property of the firm, but that all of its assets were owned by Hollins McKim, the managing member. There is nothing indicated by the record as to the ownership of property by the other partner, and the questions presented for our decision apparently do not contemplate any means of payment other than the funds whose source has already been described. In this state of the case we are unable to apply the ordinary rules which govern the distribution of the joint and separate estates of partners among their firm and individual creditors. As there are no joint assets, and as the individual estate in question, so far as the record discloses, is the only one to which any of the creditors can resort, a well recognized exception to the general rule permits the creditors of both classes to share ratably in the fund. *McCulloh* v. *Dashiell,* 1 H. & G. 96; 30 *Cyc.* 552; *Lindley on Partnership,* 731; 22 *Amer. & Eng. Ency. Law,* 2d ed., 198; *In re Budgett* (1894) 2 Ch. 557. The conditions here existing are such as to make this principle of equality peculiarly appropriate and equitable. It is evident from the record that the estate which came into the hands of the receiver included assets which, while owned by one of the members, were used by the partnership,

and justice requires that the firm creditors should be allowed to participate in a fund which has been derived to a considerable extent from the business in connection with which their claims were contracted.

If, therefore, the debt represented by the appellant is to be regarded as a several liability of one of the partners, upon the theory that it orignated in a tort of the firm, it must nevertheless share *pari passu* with the partnership creditors under the present circumstances. It could not be awarded a preference merely as an individual debt, in the view we take of the case; and its character as an *ex delicto* claim gives it no right of priority. *Drovers' Bank* v. *Roller,* 85 Md. 495.

But there is an alternative proposition submitted on behalf of the appellant. It is shown that at the time of the application for the receivership there was to the credit of the firm in the National Bank of Baltimore the sum of $5,406.03 which was paid to the receiver. The bank also held certain securities of the firm valued at about $1,800.00, which, with other collateral, had been pledged for its loans, and which the bank surrendered to the receiver upon the payment of a balance of $927.71 due on the firm's indebtedness. If the deposit and the securities mentioned had been appropriated by the bank upon its loans to McKim and Company, the rehypothecated securities of the appellants intestate and other creditors similarly situated would to that extent have been released. It is insisted, therefore, that upon the principles of marshalling and subrogation the deposit and collateral paid and delivered by the bank to the receiver, after deduction of the amount paid by the latter to obtain the securities, were properly distributable to the redeeming owners of the stocks and bonds which the firm had repledged to the bank. In our judgment this contention rests upon an equitable basis and must be sustained, with the qualification to be subsequently stated. There can be no question as to the right of the bank to apply the firm's deposit to its debt. *Colton* v. *Drovers' Building Association,* 90 Md. 94; *Miller* v. *Bank,* 30 Md. 392. Instead of pursuing this course the bank paid the

.amount to the receiver shortly after his appointment and relied for its indemnity upon securities which included, though doubtless not to its knowledge, assets belonging to customers of the pledgor. The owners of the rehypothecated collateral were clearly entitled to have the funds and securities available to the bank marshalled and applied in such a way as to relieve their property as far as practicable without injury to the bank's interests. 1 *Story's Eq. Jur.,* 13th ed., sec. 638; 3 *Pomeroy's Eq. Jur.,* sec. 1414; *Dize* v. *Beacham,* 81 Md. 603; *Burger* v. *Grief,* 55 Md. 578; *Lieb* v. *Stribling,* 51 Md. 285; *Pope* v. *Balto. Warehouse Co.,* 103 Md. 15. This could undoubtedly have been insisted upon as against McKim and Company's interest in the assets in the hands of the bank, and the receivership does not change the rights of the parties in that respect. *Woodland* v. *Wise,* 112 Md. 37; *Gaither* v. *Stockbridge,* 67 Md. 224. The bank having elected to release the deposit and part of the collateral of the debtor firm and to depend upon securities which have been subsequently found to be composed in part of property of the appellant's intestate and other customers of the firm, the owners of the securities thus rehypothecated were entitled to be subrogated to the lien of the bank upon the assets surrendered to the receiver. It has been repeatedly held that a junior lienor may be accorded such relief (26 *Cyc.* 938, and numerous cases there cited), and it is, of course, no less available to the equitable owner of property which has been repledged.

The cases of *Ex parte Salting,* 53 L. J. Ch. 414; *Gould* v. *Farmers' Loan and Trust Co.,* 23 Hun. 322; *In re Price et al.,* 171 N. Y. 15, and *Hutchinson* v. *Leroy,* 113 Federal Rep. 202, were instances of the rehypothecation of collateral under conditions analogous to the present, and the principles here found controlling were applied.

It has been argued on behalf of the appellee that the appellant is not in a position to enforce these principles because of his voluntary redemption of the securities in question by leave of the Court upon the terms imposed by its order. In

our opinion there is no inconsistence between the course
adopted by the appellant's intestate for the protection of his
property and the present assertion of the right of subroga-
tion. There is no difference in principle, so far as the issue
before us is concerned, between the receipt by the pledgee
bank of $17,860.00 from the owner of the pledged collateral
and its realization of that amount from a sale of the securities.
In either instance there is an equal reduction of the bank's
claim against the debtor partnership at the expense of the
owner of the collateral. The orders of Court permitting the
redemption and referring the question of priority to the audi-
tor are, as indicated by the questions already given, suffi-
ciently broad to include such a claim of right as is here pre-
sented.

The appellant's theory is that in determining his propor-
tion of the assets to which the right of subrogation applies
only the creditors who redeemed their securities are to be
considered. But we are unable to discriminate upon princi-
ple between this class of creditors and those whose repledged
collateral was sold for the purpose of satisfying the bank's
claims against the firm. Each class has contributed in the
form of cash advanced or securities appropriated towards the
payment of debts which would otherwise have absorbed the
assets in reference to which the right of subrogation is
invoked, and the creditors of both classes were entitled to the
benefit of that principle in so far as their claims represented
collateral repledged with the institution which released the
assets in question to the receiver. The amount which the appel-
lant's claim is to be allowed out of the fund produced by
these assets, after charging against it the sum advanced by
the receiver to the bank, as previously stated, must be ascer-
tained by such an apportionment as would be required if all
the creditors in the situation just described had asserted the
same right of participation.

The appellant's claim of priority over the general creditors
as to the bank balance was sought to be supported also by the
contention that it should be regarded and appropriated as a

trust fund for the benefit of the owners of the securities whose rehypothecation contributed to the procurement of the loans from which the original deposit was derived; but a discussion of this point is obviated by the view we have taken of the other questions presented.

. We concur in the conclusion of the learned Court below that the appellant is not entitled to a preference generally over the creditors of the firm, but to the end that her claim may receive a due proportion of the special funds we have indicated the order overruling the exceptions must in that respect be reversed.

The other owners of repledged collateral may share in these assets on the same basis as the appellant if they are found, upon the remanding of the cause, to be in a position to now assert such a right; but as their claims are not before us for adjudication we express no opinion as to whether they are entitled to such participation.

*Order affirmed in part and reversed in part and cause remanded, the costs to be paid out of the estate.*