163 So. 798

**NORRIS et al. v. COMMERCIAL NAT. BANK OF ANNISTON.**

**7 Div. 286.**

Supreme Court of Alabama.
Oct. 17, 1935.

Rehearing Denied Nov. 7, 1935.

L. C. Longshore, Rutherford Lapsley, and C. H. Young, all of Anniston, for appellants.

Merrill, Jones & Whiteside, of Anniston, for appellee.

KNIGHT, Justice.

The appeal in this case is prosecuted by appellants, creditors of the estate of O. A. Hilton, deceased, from a decree of the circuit court, made and entered on the report and final settlement of the Commercial National Bank of Anniston, as executor of the last will and testament of said decedent, in which, among other matters here assigned for error, the court approved the report of the executor, and ratified and approved the application of the Commercial National Bank of Anniston of the deposit of $1,780.09 to the payment, pro tanto, of the decedent's indebtedness to the bank.

It appears from the record that O. A. Hilton, a citizen of Calhoun county, died in said county on or about October 30, 1931, leaving a last will and testament, in which the said Commercial National Bank of Anniston and one Tom Blake Howle were named as executors.

On November 10, 1931, the will of said decedent was filed for probate in the probate court of Calhoun county by the said Commercial National Bank of Anniston.

On December 12, 1931, after due notice and hearing, the said will was admitted to probate and record. Tom Blake Howle renounced his right to be appointed coexecutor of said will, and thereupon the court appointed the Commercial National Bank of Anniston sole executor of the will,

and letters testamentary were on said date issued to said bank.

At the time of the death of said Hilton, he had to his credit in said bank the sum of $1,780.09. This sum represented the balance of decedent's general deposit in said bank.

The decedent, at the time of his death, owed the appellee $2,000, evidenced by four promissory notes, maturing as follows, November 1, 1931, November 9, 1931, December 2, 1931, and December 2, 1931, each in the principal sum of $500, and each contained the following stipulation: "The said Commercial National Bank is hereby authorized by each maker and indorser hereof to apply at any time any funds in said bank belonging to any one or more of said makers or indorsers to the payment of this debt."

On the day of the death of said Hilton, the Commercial National Bank applied the balance of his general deposit, $1,780.09, to the payment of the said notes, leaving a balance due the bank of $219.91. At that time the bank had no information that it had been named as a joint executor of the will of said decedent.

It appears that the Commercial National Bank did not file in the office of the probate judge of Calhoun county a statement of any claim against the estate of O. A. Hilton for the indebtedness represented by the said four notes, nor did it file any claim in said office for the $219.91 balance.

The Commercial National Bank, as executor, made its final report to the court on April 12, 1934, and therein reported its action in applying the said deposit of O. A. Hilton in said bank to the payment of decedent's said notes, and asked the approval of the court of said application.

On final hearing of the report and final settlement of the Commercial National Bank as such executor, the court approved the settlement and ratified and approved the application of the deposit of $1,780.09 to the payment of said decedent's indebtedness to the bank. The court disallowed, in its decree, the claim of the Commercial National Bank for the balance of the indebtedness of said Hilton to it, upon the stated ground that no proper claim therefor had been filed against the estate as the law requires.

It may be well to here note that the administration of said estate was removed from the probate court into the circuit court on December 9, 1932; the estate was declared and adjudged to be insolvent on February 22, 1934; the report for final settlement of the administration of said estate by the Commercial National Bank was filed April 12, 1934, and exceptions were filed thereto by appellants on April 23, 1934; and the decree approving the report and settlement of the executor, and disallowing and overruling demurrers thereto was rendered, on May 9, 1934.

The foregoing statement, we believe, will suffice to show the basis for our conclusion on this appeal.

In brief of counsel for appellants, we find this concluding statement: "The sole question brought up by this record is the enforcement of the policy of our law to protect the estates of decedents, when the decedent owes the executor; if the decedent does owe the executor, funds of the estate cannot be taken by or paid to the executor unless and until a claim is filed in statutory form in the office of the judge of probate; this statute was not complied with, and the claim is 'forever barred, and the payment or allowance thereof is prohibited'; the circuit court should be held in error."

In this case it must be borne in mind that before the court approved and allowed the application of the balance on deposit to the credit of the said O. A. Hilton, at the time of his death, to the payment, pro tanto, of his indebtedness to said bank, the estate of said Hilton had been duly declared insolvent, and the notes given by said decedent to said bank had matured. Nor must we lose sight of the fact that the said estate is being administered in a court of equity, where equitable principles, in the settlement of said estate, will be applied.

There can be no doubt but that the bank, independent of any contract, would have had the right to apply the balance to the credit of said Hilton, in said bank, to the payment of his indebtedness, if that indebtedness had been due.

By a long line of decisions in this state, it is settled that a banker has a lien on all moneys and funds of a depositor, coming into his possession in due course of business, for any balance of general account due from the customer. In re Tallassee Mfg. Co., 64 Ala. 567; Tatum v. Commercial Bank & Trust Co., 193 Ala. 120, 69 So. 508, L. R. A. 1916C, 767; King v. Porter, 230 Ala. 112, 160 So. 101.

Mr. Morse, in his Treatise on Banks and Banking (2 Morse on Banks and Banking [3d Ed.] section 563), says: "If the bank, at the maturity of a note held by it, holds funds that, by a scratch of the pen, it could apply upon the note, thus securing itself, it is difficult to see why neglecting so easy a means of security is not as improper as giving up collateral expressly designated for the purpose of securing the note."

In the case of Wynn, Adm'r, v. Tallapoosa County Bank, 168 Ala. 469, 489, 53 So. 228, 236, it is said: "As to a general deposit the bank has a right to set-off as for the balance of the general account of the depositor; and of course so long as that balance is in favor of the depositor the lien or right has neither existence nor validity; but the moment any advance or loan by the bank is made to the depositor—in the form of an overdraft, a discount, acceptance, etc.—then the lien or right is born, and may be applied by the bank (and the bank only) to the payment of such indebtedness till it is fully discharged. Morse on Banks & Banking, §§ 324, 334; Lehman's Case, 64 Ala. 567; Dean v. Allen, 8 Johns. (N. Y.) 390."

The lien referred to in the above cases exists under the common law in favor of the bank, and is independent of any contract lien.

However, in the instant case, the Commercial National Bank insists it was justified in applying the balance of its depositor's general account to the payment of his indebtedness, not only under its law-created lien, but also under the contract contained in the note.

The appellants bring to our attention, in support of their contention that the appellee had no authority to apply the decedent's balance to the payment of said notes, the case of Birmingham National Bank v. Mayer, 104 Ala. 634, 16 So. 520, 522, in which it was said by McClellan, J.: "It is well settled, at least at law, that a bank has no power or authority to thus appropriate the amount it owes a depositor to an unmatured debt the depositor owes it, and this though the depositor be insolvent." This case is cited by the author of the note to the case of Gerseta Corporation v. Equitable Trust Co. of New York, reported in 43 A. L. R. 1320, as placing the Alabama court in line with the minority view in such cases.

The case cited was a proceeding at law, where the equitable principle here involved could not be invoked, and this court, since the rendition of the opinion in that case, has recognized and enforced the equitable right of a bank, in such circumstance, to have the application made. This, upon the broad principle that it would be unjust and inequitable to permit the debtor's creditors to displace the bank's lien; for in the last analysis the only amount owing the debtor by the bank was the difference between the two debts. Hall v. Clark et al., 227 Ala. 571, 151 So. 445, 446.

The overwhelming weight of authority supports the following rule: On the insolvency of a depositor a right of set-off exists against the insolvent or his assignee even though the bank's claim against the insolvent is not yet due; the cases proceeding on the theory that insolvency renders all debts due, and furnishes, of itself, a sufficient ground for set-off. Schuler v. Israel, 120 U. S. 506, 7 S. Ct. 648, 30 L. Ed. 707; Pendleton v. Hellman Commercial Trust & Savings Bank, 58 Cal. App. 448, 208 P. 702; Gnarini v. Swiss American Bank, 162 Cal. 181, 121 P. 726; Georgia Seed Co. v. Talmadge, 96 Ga. 254, 259, 22 S. E. 1001; Fourth National Bank v. City National Bank, 68 Ill. 398; Thomas v. Exchange Bank, 99 Iowa, 202, 68 N. W. 780, 35 L. R. A. 379; Kentucky Flour Co.'s Assignee v. Merchants' National Bank, 90 Ky. 225, 13 S. W. 910, 9 L. R. A. 108; Records v. McKim, 115 Md. 299, 80 A. 968, 43 L. R. A. (N. S.) 197; Demmon v. President, etc., of Boylston Bank, 5 Cush. (Mass.) 194; Stolze v. Bank of Minnesota, 67 Minn. 172, 69 N. W. 813; Wunderlich v. Merchants' National Bank, 109 Minn. 468, 124 N. W. 223, 27 L. R. A. (N. S.) 811, 134 Am. St. Rep. 788, 18 Ann. Cas. 212; Van Wagoner v. Paterson Gaslight Co., 23 N. J. Law, 283; Hodgin v. Peoples' National Bank, 124 N. C. 540, 32 S. E. 887; Felton v. German National Bank, 9 Ohio Dec. 229; Parker v. First National Bank, 96 Okl. 70, 220 P. 39; Nashville Trust Co. v. Fourth National Bank, 91 Tenn. 336, 18 S. W. 822, 15 L. R. A. 710; Traders' National Bank v. Cresson, 75 Tex. 298, 12 S. W. 819; Ford's Adm'r v. Thornton, 30 Va. (3 Leigh) 695; Alsager v. Currie, 12 Mees. & W. 751, 152 Eng. Reprint, 1402; Browning et al. v. Eiken et al., 189 Minn. 375, 249 N. W. 573.

This court is now firmly committed to the equitable principle that insolvency of the party against whom the set-off is claimed is, "as a broad general rule, held to be such

a special equity as will induce a court of equity to take jurisdiction to allow the set-off." Hall v. Clark et al., supra; Conecuh County v. People's Bank of Evergreen, 161 So. 515:

The basic principle giving rise to such an equity is the injustice of permitting one person to enforce his claim, while at the same time, on account of his insolvency, the other party, with equally as meritorious a claim, is left with a demand wholly unenforceable against the insolvent.

It is generally held that where parties have cross-demands against each other, the real indebtedness is the excess of one debt over the other. Washington v. Timberlake, 74 Ala. 259.

It was not necessary, in order to apply the balance remaining to the credit of O. A. Hilton to the payment of the latter's indebtedness to the bank, that the bank should have first filed the notes as claim against Hilton's estate. This was expressly decided by the court in our recent case of King v. Porter, supra.

Under the facts appearing in the record, it is certain that at the time the Commercial National Bank asked to be allowed credit for the amount it had applied to the payment of the notes of O. A. Hilton held by it, the said notes were past due and unpaid, and it is also a fact that these notes were past due when Hilton's will was probated and the Commercial National Bank was appointed executor. Whether the bank prematurely made the application is of no consequence, and involved no injury to the creditors of the estate. In making this application, the lien of the bank against the funds of the estate in the bank was discharged as efficaciously as if the application was made after the notes matured. In view of the insolvency of the decedent, a court of equity would have intervened and protected the rights of the bank. Authorities, supra.

There is no merit in the contention of appellant that the bank lost, by the death of the debtor, whatever lien it may have had prior to his death. The lien given by law in such cases is not dissolved by the death of the debtor. King v. Porter, supra. Nor was the contract lien discharged by the death of said Hilton. The power to enforce this lien was not revocable at the will of the maker of the notes. While a mere naked power is revocable at the will of the grantor, and consequently is revoked by his death, yet, where this power is coupled with an interest, or is given for a valuable consideration, or as security, it is irrevocable. 49 Corpus Juris, p. 1255.

Hilton in his lifetime could not have revoked the power given the bank to apply any balance to his account in the bank to the payment of said notes, and consequently such revocation was not effected by his death. The argument advanced by appellants on this point is without force. Nor is there merit in their contention that, upon the death of Hilton, the possession and title to the balance of the deposit of said decedent in the bank passed eo instanti to the executor for the purpose of administration, freed of the common law, as well as the contract, lien of the bank. It is true that upon the appointment of the executor, after the probate of the will, the title to all personal property of the testator vested, for the purpose of the administration of the estate, in the personal representative, and, by virtue of the law, this title related back to the death of the testator, but the personal representative only stepped into the shoes of the decedent, acquiring no better or higher title than the decedent had. He took the title incumbered to the same extent as it was when the testator died. No one, we take it, would argue that upon the death of the mortgagor his personal representative would acquire title to the mortgaged personal property freed of the mortgage. It would be just as plausible, we submit, to make such an argument, as it is to argue that the bank, by the death of Hilton, lost its lien upon the $1,780.09, representing the balance on deposit by Hilton at the time of his death. It is our conclusion and judgment that the court properly allowed the appellee to apply the $1,780.09 to the bank's debt against the decedent.

While other errors are assigned, the foregoing disposes of all insistence here argued by appellants for a reversal of the cause. We, therefore, treat all other questions as waived. Pure Milk Co. v. Salter, 224 Ala. 417, 140 So. 386; Louisville & Nashville R. Co. v. Holland, 173 Ala. 675, 55 So. 1001.

We are at the conclusion that the decree of the circuit court, in equity, is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.