180 So. 573

## LIFE & CASUALTY INS. CO. v. BELL.

### 6 Div. 278.

Supreme Court of Alabama.

April 14, 1938.

. Wm. A. Jacobs, of Birmingham, for appellant.

Paul G. Parsons, of Birmingham, for appellee.

**THOMAS, Justice.**

The suit was upon a health and accident insurance policy. The assured received physical injury in the discharge of the duties of his employment. Defendant and other companies paid claim for disability due to his accident and injury sustained on February 15, 1924, and discontinued payment on advice of physician. The position taken was not questioned until June, 1928, when assured claimed total disability since February 15, 1924.

The plaintiff filed suit against defendant on same policy, and on April 15, 1929, this case was settled and the entire liability paid to plaintiff's attorney of record by its check on the Southern Bank & Trust Company, which said check was payable to plaintiff and his attorney of record and was indorsed, "settlement in full of all claims of Will Bell against Company and especially of all claims on policy No. 2729482, duly surrendered for cancellation by said Will Bell and his attorney." Simultaneously with the delivery of said check, plaintiff's attorney delivered to defendant company the policy, receipt book, and written release signed by plaintiff and a written release signed by plaintiff's attorney, and the attorney's contract with plaintiff that the case be duly dismissed. This settlement was unquestioned until February 13, 1935, when the present suit was brought to recover disability benefits under said policy since February 15, 1924, the date of the injury.

Meanwhile the releases, policy, and receipt book were misplaced, and on this trial the insistence is made that the indorsement on the check was forged, the Southern Bank & Trust Company has been liquidated and plaintiff's former attorney not engaged in the practice of law.

Plaintiff testified he did not have the policy, that he had delivered it to Mr. Countryman, his former attorney, who was present at this trial, and laid a predicate for secondary evidence as to the policy and a printed form thereof exhibited, which was admitted in evidence.

Countryman was not offered as a witness by the plaintiff, though present in court, and plaintiff, over defendant's objection, was permitted to show that such former attorney had been disbarred and prevented from the further practice of the law. In re Countryman, 228 Ala. 21, 152 So. 257. Whereupon defendant proved by Wm. A. Jacobs and J. H. Countryman the contents of the last releases and contract of plaintiff of record in 1929, in bringing and settling the suit, and the delivery of the documents in question.

The case is thus stated by appellant's counsel:

Mr. Countryman testified that his written contract with Bell gave him full authority to make a settlement without any further consent being obtained, to settle the case or compromise it for him in court or out of court, to sign Bell's name to any papers in connection with it, including any check, without further authority being required, and to use his judgment as to what was for the best interest of Bell, and that the fee was a 50 per cent. contingent fee; that he negotiated with local manager for the defendant company and reached an agreement with Mr. Adams, who told him to

deliver the papers to Mr. Jacobs, the defendant's attorney; that at the time, April 15, 1929, when Mr. Jacobs delivered to Mr. Countryman the check drawn by Mr. Adams for $900 in settlement of the case and all liability under the policy, Mr. Countryman delivered to Mr. Jacobs for the company policy and receipt book and Countryman's contract with plaintiff and a release signed by Countryman and also a release signed by the plaintiff; that Mr. Countryman first took to Mr. Jacobs his contract with the plaintiff and a release signed by Countryman and pointed out to Mr. Jacobs that the contract authorized Countryman to settle the case if he thought best. Mr. Jacobs received those papers, required Mr. Countryman to get an additional release executed by the plaintiff, which Mr. Countryman did and delivered it to Mr. Jacobs, and Mr. Countryman personally saw the plaintiff read over this release and sign it and Countryman witnessed it and delivered it to Mr. Jacobs, the release being a full and complete release of any and all liability under the policy, past, present, and future. Mr. Jacobs testified to substantially the same facts.

Countryman admitted that Bell did not indorse the check and stated that he had someone in his office to sign Bell's name to the check, claiming authority to do that under his written contract with Bell. Countryman admitted getting the $900 and claimed that he had tried repeatedly to give Bell half of that money, but Bell would not accept the amount.

The record shows that another attorney, Mr. J. G. Adams, had a similar experience with Bell, that at this same time Mr. Adams was handling another case against another insurance company for Bell to recover disability benefits from that company for this injury, and that Mr. Adams also made a settlement of that case, but Will Bell would never accept any of the money. Mr. Adams settled two cases for Bell for this injury about the same time, one being against the American National Life Insurance Company of Galveston, Tex., represented by Mr. Jacobs, and the other being against the Pilgrim Life & Health of Augusta, Ga., represented by Mr. Vassar Allen. Bell refused to take any of the money in any of these cases. He refused to accept compensation from the foundry company where he was working when he got injured. Mr. Fletcher Lord, another attorney, also represented Bell in one or more of these settlements.

The policy contains the following provision: "Should the total amount of weekly benefits received by the insured under all policies carried in this and all other companies and associations exceed the sum of Twelve Dollars per week, the Life & Casualty Insurance Company of Tennessee shall only be liable to the insured for such proportion of the amount provided for herein, under head 'Weekly Benefits,' as the said Twelve Dollars bears to the total weekly benefits receivable under all policies carried by the insured."

In this connection the plaintiff testified, as follows: "At the time I got hurt in February, 1924, I was carrying four accident disability policies. I had one with the National Life of Nashville, Tennessee, and I had one with the National of Chicago which was $7.50 per week, and I had one with the Atlanta Life, which was $5.00 per week and I had one with the American National of Galveston which was a group policy and provided for $60.00, but it didn't provide for weekly benefits. They were to pay me $60.00 a week. I had one with the Pilgrim Life & Health which paid me $5.00 a week and I had one with the North American Life which paid me $10.00 a week and I had one with the Metropolitan but it didn't pay me. It was a straight life. It didn't provide for any sick benefits * * * $60.00 group policy that I was talking about a while ago provided for $60.00 a week as long as I was totally and permanently disabled. It was a special policy."

The defendant, in addition to the general issue, had pleas of accord and satisfaction, limitations of six and ten years, set-off for premiums, and that disability was due to syphilis and other venereal disease not covered by the policy.

The trial resulted in verdict and judgment for plaintiff.

■ We find no error in establishing the written instruments in question and stating the contents thereof, the original being shown to have been lost, misplaced, on delivery to plaintiff. Alabama Construction Co. v. Meador, 143 Ala. 336, 39 So. 216.

It has been held in another jurisdiction that, for the purpose of discrediting a witness, he may be asked if he had not been disbarred from the practice of the law. Lansing v. Michigan Central R. R. Co., 143 Mich. 48, 106 N.W. 692.

■ The statute declares the rule of disqualification or impeachment in this jurisdiction to be that of conviction for infamous crime or moral turpitude. Code 1923, § 7722; Williams v. State, 144 Ala. 14, 40 So. 405; Gillman v. State, 165 Ala. 135, 51 So. 722; Wilson v. Vassar, 214 Ala. 435, 108 So. 250.

The trial court properly permitted proof that Countryman was disbarred from the practice of law in this state, though it was not for any act done in the instant case. In re Fite, 228 Ala. 4, 152 So. 246; Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671; Ex parte Messer, 228 Ala. 16, 152 So. 244; In re Countryman, supra; 70 C.J. p. 857, § 1064.

■ We come to consider the remarks of plaintiff's counsel in argument to the jury. The exceptions were to the following:

· "I presume that there is not a man here that has an insurance policy that knows what is in it all of the way through. The agent comes around and sells you the insurance, tells you all of the benefits of it. * * *

"All right. That was a non-cancellable contract, that there was no way they could release their liability under that, except, at a time when a man got sick, as long as he paid his premiums, they had to pay him as long as he was sick and disabled, under the terms of the contract. Why, sure, they would like to get out from under a contract of that kind. Why, this poor old man over there, if you stopped and thought and figured up, he should have had $5,000.00 by this time under that contract, and instead of that he has been living off charity. * * *

"Now, gentlemen of the Jury, we have heard a whole lot of law and evidence and exhibits read in this suit between these parties here in this Court. But gaze upon that depressing figure over there, with your own eyes. You do not need any other testimony. He is Exhibit A.

"This whole issue, is, then, how much is he entitled to in this case? How much is this man here, crippled, deformed, hasn't had a shoe on his foot for thirteen years, had to be on crutches, and here is a man that has this accident. On the other hand, a man that would take the money out of his pocket that he earned as a laborer in the foundry, to pay for insurance for protection against such accidents."

The court sustained objection to that line of argument. It was not of the ineradicable class—as grossly improper and highly prejudicial—that called for a mistrial on due motion of counsel, or the action of the court to that end. Sinclair v. Taylor, 233 Ala. 304, 305, 171 So. 728; Anderson v. State, 209 Ala. 36, 95 So. 171; Clendenon v. Yarbrough et al., 233 Ala. 269, 171 So. 277; Central of Georgia R. Co. v. Purifoy, 226 Ala. 58, 145 So. 321; McDermott v. Sibert, 218 Ala. 670, 119 So. 681; Ritter v. Gibson, 217 Ala. 304, 116 So. 158.

■ Dr. Cooper had qualified as an expert, being familiar with the subject, and, therefore, could answer the questions propounded as to whether or not the assured was totally and permanently disabled, and what the term "total permanent disability" means. Pacific Mutual Life Ins. Co. of California et al. v. Edmonson, 179 So. 185, ante, p. 365.

■ There was no error in giving plaintiff's charge 7, duly requested in writing. National Bread Co. v. Bird, 226 Ala. 40, 145 So. 462. This rule has long prevailed. Robinson v. Murphy, 69 Ala. 543, 548; Berk v. State ex rel. Thompson, 225 Ala. 324, 328, 142 So. 832, 84 A.L.R. 740; Blackwood v. Maryland Casualty Co., 227 Ala. 343, 150 So. 180.

■ There was error in giving at plaintiff's request charge No. 4. It is as follows: "Gentlemen of the Jury, I charge you that should you find from the evidence that while said policy sued on was in force and effect the plaintiff suffered injury covered by said policy and filed due proof of disability and the defendant was liable to the plaintiff on said claim but declined and refused to pay same and plaintiff continued to suffer the same disability, it would not be necessary for plaintiff to continue to file further claims of such disability."

The court, in its oral charge, had not specifically instructed the jury as to what proof or notice of injury or disability was required to be given to constitute due proof under the terms of the policy. The vice of the charge is that it submitted to the jury a question of law that is condemned by many decisions. Townsend v. Adair, 223 Ala. 150, 134 So. 637, "in accordance with his rights"; Buffalo Rock Co. v. Davis, 228 Ala. 603, 154 So. 556, "in keeping with the laws of the road"; Whitsett v. Belue, 172 Ala. 256, 54 So. 677, 680, "mentally incompetent"; City of Montgomery v. Bradley &

Edwards, 159 Ala. 230, 48 So. 809, "reasonable precaution." The foregoing will illustrate the error in giving charge 4 at the plaintiff's request. What constituted "due proof of disability" was not defined by the court in its oral charge. The question of waiver as a fact of due proof, under the pleading and proof, was for the jury. The court submitted the question of due proof without defining what would constitute due proof under the terms of the policy. Thus the pertinent question of law was submitted to the jury.

There was error in giving at plaintiff's request charge No. 6. Said charge misstates the law of set-off of any subsisting claim at the time of the commencement of the suit. It should be borne in mind that set-off is not payment and that section 10177 of the Code deals with the statute of limitations and was so applied in Washington v. Timberlake, 74 Ala. 259; Riley v. Stallworth, 56 Ala. 481; Code 1923, § 10172, as to the right of set-off; Stewart v. Burgin, 219 Ala. 131, 121 So. 420; Norris v. Commercial Nat. Bank, 231 Ala. 204, 163 So. 798; Fischer v. Pope, 233 Ala. 301, 171 So. 752.

.For these errors, the judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.