

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00028-CV

BRYAN L. WALTER                                              APPELLANT

V.

DONALD E. TELLER, JR. AND                                   APPELLEES
SONYA DEE JENNINGS

----------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION ON REHEARING[1]

----------

Appellant Bryan L. Walter filed a motion for rehearing of our opinion issued June 27, 2013. We grant the motion in part, withdraw our previous opinion and judgment of June 27, 2013, and substitute the following.

## I. INTRODUCTION

In four issues, Walter appeals the trial court's January 3, 2012 order imposing sanctions against him for violating chapters 9 and 10 of the civil

---

[1]*See* Tex. R. App. P. 47.4.

practice and remedies code. Because we hold that the trial court abused its discretion by sanctioning Walter under chapter 9 but did not abuse its discretion by imposing sanctions under chapter 10 of the civil practice and remedies code, we will reverse the trial court's order and remand the case to the trial court to reconsider the amount of sanctions to be ordered against Walter, if any, under chapter 10.

## II. BACKGROUND

The trial court signed an agreed final decree of divorce in July 2008 that dissolved the marriage between David Jennings and Appellee Sonya Jennings. As part of the division of the marital estate, Sonya was awarded, among other things, a 2007 Jeep Compass and the responsibility for paying the "balance due . . . on the promissory note payable to Capital One Auto Loans[] and given as part of the purchase price of and secured by a lien on the" Jeep. The decree also included a section entitled, "Contractual Alimony," pursuant to which David agreed to pay Sonya $600 per month for sixty months.

Sonya made the Jeep payments, but after losing her job, she had difficulty making the payments timely—she paid in the middle of the month instead of at the beginning—and she missed one payment. Because the financing for the Jeep was in David's name, Sonya could not get Capital One to "work" with her, and David would call and "harass [her about the late payments] every month." Eventually, Sonya learned through her divorce lawyer's office that David's attorney was going to begin proceedings "to take the car away" from her. So

2

Sonya, who was "tired of [David] bullying [her]" and "could not afford to legally fight him," told David that if he wanted the Jeep, he should let her know where to take it. David left Sonya a voicemail instructing her to leave the Jeep at her apartment complex and explaining that he had insurance on it and would "deal with Capital One." David picked up the Jeep shortly thereafter, Sonya quit making the loan payments (although she tried to pay for the deficiency owed), and although David paid approximately $1,900 towards the loan, Capital One eventually repossessed the Jeep. Up to that point, according to Sonya, there had been no mention of David's contractual alimony responsibility.

In August 2010, David filed an original petition, request for equitable relief, and request for disclosure in which he alleged a claim against Sonya for breach of contract. Referencing the divorce decree, David alleged that he and Sonya had agreed that he would pay contractual alimony to Sonya and that she would pay the Jeep loan. David claimed that he had upheld his end of the bargain but that Sonya had breached the contract by "ceasing to meet her obligation to make payments [on the Jeep]." David pleaded for rescission of the decree and, alternatively, damages for, among other things, "As of July 1, 2010, $15,000 in contractual alimony payments" and "$21,000 obligation for remaining contractual alimony payments."

In November 2010, Sonya filed a motion for sanctions against David and his attorney, Walter, arguing that they had violated chapter 10 of the civil practice and remedies code for, among other things, filing a claim that was not supported

3

by existing law. David later filed a notice of nonsuit, and the trial court signed an order granting the nonsuit on May 24, 2011.

Between June 2011 and November 2011, the trial court conducted three hearings on Sonya's motion for sanctions, which she amended to include a violation of chapter 9 of the civil practice and remedies code. On January 3, 2012, the trial court signed the sanctions order that is the subject of this appeal, finding that both David and Walter had violated chapters 9 and 10 of the civil practice and remedies code and ordering David to pay Sonya's attorney's fees in the amount of $6,830.00 and Walter to pay Sonya's attorney's fees of $13,657.50.[2] Walter, but not David, appeals the sanctions order.

### III. VOID SANCTIONS ORDER

In his first issue, Walter argues that the January 3, 2012 sanctions order is void because the trial court signed it months after the court's plenary jurisdiction had expired. According to Walter, the May 24, 2011 order granting David's nonsuit "had the effect of dismissing the entire case and the date of that order was the starting point for determining when the trial court's plenary jurisdiction expired."

The expiration date for a trial court's plenary power is calculated from the date the court enters a final order disposing of all the claims and parties. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 95–97 (Tex. 2009). "A judgment

---

[2]The sanctions order also directed Walter to pay Sonya's attorney $15,000 in the event Walter unsuccessfully appealed the order to the court of appeals and $20,000 in the event of an unsuccessful appeal to the supreme court.

4

dismissing all of a plaintiff's claims against a defendant, such as an order of nonsuit, does not necessarily dispose of any cross-actions, such as a motion for sanctions, unless specifically stated within the order." *Crites v. Collins*, 284 S.W.3d 839, 840 (Tex. 2009). Thus, an order of dismissal pursuant to nonsuit is not a final, appealable order when the order does not "unequivocally express an intent to dispose of all claims and all parties." *Id.* at 841; *see Unifund CCR Partners*, 299 S.W.3d at 95–97 (reasoning that sanctions order was not void because motion for sanctions was (1) pending when trial court signed dismissal order and (2) not specifically referenced by dismissal order); *see also* Tex. R. Civ. P. 162 ("A dismissal under this rule shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal, as determined by the court.").

Here, Sonya filed her original motion for sanctions in November 2010, and the trial court signed the order granting David a nonsuit in May 2011. The motion for sanctions was therefore pending when the trial court signed the dismissal order. As for the finality of the dismissal order, it is entitled, "Order Granting Nonsuit," and states, "On May 24, 2011, the Court received the Notice of Nonsuit of DAVID LYNN JENNINGS and ORDERS this case dismissed without prejudice to DAVID LYNN JENNINGS's right to refile it. All costs incurred are taxed against DAVID LYNN JENNINGS, for which let execution issue if not paid." The dismissal order did not specifically reference Sonya's motion for sanctions or otherwise unequivocally express any intent to dispose of the motion; therefore,

5

the order was not a final order that disposed of the motion for sanctions. *See Unifund CCR Partners*, 299 S.W.3d at 96–97 (conducting similar analysis); *In re Anderson*, No. 01-10-00182-CV, 2010 WL 1612309, at *2 (Tex. App.—Houston [1st Dist.] Apr. 19, 2010, orig. proceeding) (mem. op.) (same). Accordingly, the trial court's plenary power had not expired before it entered the January 3, 2012 sanctions order. We overrule Walter's first issue.

## IV. MERITS OF SANCTIONS ORDER

In his fourth issue, Walter argues that the trial court abused its discretion by imposing sanctions against him under chapters 9 and 10 of the civil practice and remedies code because the original petition "was not groundless and without evidentiary support when it was filed and was not filed for an improper purpose." We limit our analysis to the propriety of ordering sanctions under chapter 10.

We review a trial court's ruling on a motion for sanctions under an abuse-of-discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire*, 134 S.W.3d at 838–39.

Chapter 10 of the civil practice and remedies code permits sanctions for the filing of frivolous pleadings and motions. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001–.006 (West 2002). Specifically, section 10.001 provides in relevant part as follows:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that

6

to the signatory's best knowledge, information, and belief, formed after reasonably inquiry:

> . . . .

>    (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.] . . .

*Id.* § 10.001(2). A court that determines that a person has signed a pleading or motion in violation of section 10.001 may impose a sanction against the person who signed the pleading. *Id.* § 10.004(a).

Sonya argued in her original motion for sanctions that Walter should be sanctioned for filing the original petition because, in violation of civil practice and remedies code section 10, the petition contained a "claim, defense or other legal contention that is not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law."[3] Sonya outlined the specific offending conduct as follows:

>    a. Plaintiff's Petition seeks rescission of the parties' divorce decree (including rescission of $21,000.00 in remaining contractual alimony payments) . . . .

>    . . . .

>    c. Plaintiff's Petition seeks damages and attorney's fees that have not been incurred and that are not reasonably related to this suit.

>    d. Plaintiff's Petition seeks to use this lawsuit as a sledgehammer to release Plaintiff from a $21,000.00 contractual alimony obligation.

---

[3]The amended motion for sanctions contained much of the same language and allegations.

7

At the hearing on the motion for sanctions, David agreed that his damages claim included a request that he be awarded $15,000 for contractual alimony payments that he had already made and that he be released from paying the remaining $21,000 in contractual alimony payments owed.

The trial court was well within its discretion to sanction Walter for violating civil practice and remedies code section 10.001(2) because the damages allegations contained in the original petition included two contentions that are not warranted by existing law. Specifically, the record demonstrates that the conduct for which David sought to hold Sonya accountable was her alleged failure to continue making the Jeep payments. Instead of filing a motion to enforce Sonya's responsibility to make the Jeep payments, Walter, on behalf of David, chose to sue Sonya under a breach-of-contract theory.[4] Walter alleged that

---

[4]Contractual alimony agreements are enforceable as contracts and are governed by contract law, *see Heller v. Heller*, 359 S.W.3d 902, 903 (Tex. App.—Beaumont 2012, no pet.), but Walter argues that the *entire* divorce decree (not just the alimony agreement) is enforceable as a contract, in part because the decree contains the following statement under a heading that says "Agreement of Parties": "To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract." For purposes of this analysis, we will assume without deciding that David had the option to bring a breach-of-contract claim against Sonya for her alleged failure to continue making the Jeep payments.

Walter complains about this footnote in his motion for rehearing. He says it is "misleading" because it "seems to suggest that only the contractual alimony agreement is governed by contract law and that the remainder of the divorce settlement agreement is not." The footnote makes no such suggestion. It merely indicates, in unambiguous terms, what it states—that in performing our analysis, we will assume without deciding that a breach-of-contract claim was permissible under these circumstances.

8

Sonya had breached the contract by "ceasing to meet her obligation to make payments [on the Jeep]," and he claimed that David's damages included, among other things, "$15,000 in contractual alimony payments" and "$21,000 obligation for remaining contractual alimony payments." Thus, David alleged that his damages for Sonya's alleged failure to continue making Jeep payments included reimbursement of contractual alimony payments and termination of his future contractual alimony obligation.

It is well established that to recover damages for breach of contract, a plaintiff must show that the damages sought were the natural, probable, and foreseeable consequence of the defendant's conduct. *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687–88 (Tex. 1981). The absence of this causal connection between the alleged breach and the alleged damages will preclude recovery. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex. App.—El Paso 2000, no pet.).

To the extent that Sonya's responsibility to make the Jeep payments was enforceable as a contractual obligation, there is nothing in the record to indicate that David's damages for Sonya's alleged breach of that obligation could have included reimbursing David for contractual alimony payments already made, termination of his future contractual alimony obligation, or both. Indeed, there is

9

a complete lack of any causal connection between the alleged breach and the alleged damages.[5]

Walter attempts to establish a connection between the allegations by stating that Sonya specifically agreed to make the Jeep payments in exchange for David's agreement to make contractual alimony payments, but the rules of contract construction, as applied to the decree, belie this argument. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Walter makes no attempt—even in his motion for rehearing—to explain how, in light of the specific language of the divorce decree, reimbursing David for contractual alimony payments already made or terminating his future contractual alimony obligation would be a natural, probable, and foreseeable consequence of Sonya's alleged failure to continue making Jeep payments.

In his motion for rehearing, Walter argues, "It is uncontroverted that the contract incorporated into the divorce decree required Sonya to pay all of the Jeep debt . . . , that she failed to pay the debt, and that her failure to pay resulted in monetary damages to David. How can it be said that David's claim was groundless?" He also states that "one cannot say that the claim as a whole is without legal basis." We do not hold that "David's claim was groundless" or that "the claim as a whole is without legal basis." Indeed, had David not nonsuited his

---

[5]Walter points out in his brief that as a result of Sonya's alleged breach, David "incurred damages resulting from payments that he made to Capital One Auto Finance, harm to his credit, and liability to Capital One Auto Finance after the Jeep was repossessed." He does not mention the damages allegations that were the subject of the motion for, and order imposing, sanctions.

claims, he may very well have been entitled to recover the damages that are mentioned in footnote five, but those matters are not before us, nor may we speculate about them. Instead, the very narrow issue here is whether the trial court abused its discretion by sanctioning Walter for seeking reimbursement for contractual alimony payments already made and termination of his future contractual alimony obligation as "damages" for Sonya's alleged failure to continue making the Jeep payments. We express no opinion about any other claims alleged by David, and we decline to conflate the issue in this appeal with the other bases for recovery that were alleged but that are not part of this appeal.

Walter further argues on rehearing that our holding conflicts with other cases that recognize "that an offset against future alimony payments is an appropriate remedy." He contends that there is no reason that the doctrine of setoff should not be applied "to *competing claims* between ex-spouses which arise from the same contractual divorce agreement." [Emphasis added.] We do not hold that an offset is inappropriately applied to "competing claims between ex-spouses which arise from the same contractual divorce agreement" because this case did not involve competing claims between Sonya and David. For example, if in addition to David seeking to recover damages against Sonya for her failure to continue making Jeep payments, Sonya had sought to recover past-due alimony payments from David, then the trial court would have been in a position to offset any damages that David recovered on his breach-of-contract claim against any amount of past-due child support that Sonya recovered under

11

her competing claim for past-due alimony. But Sonya did not allege any claims against David. The only claims were those alleged by David against Sonya. Thus, to the extent that David could have recovered against Sonya for breach of contract, the trial court would have had no competing claim and damages against which to offset David's would-be damages.

Walter directs us to *Bandy v. First State Bank*, but that case actually reinforces our point. *See* 835 S.W.2d 609 (Tex. 1992). There, the supreme court observed, "The doctrine of setoff is ancient, having its roots in early bankruptcy law in England. The effect of setoff was to allow a defendant in a suit for a debt *to raise a debt* owed by the plaintiff to the defendant *as a defense or counterclaim.*" *Id.* at 618 (citations deleted, emphasis added). The supreme court cited an opinion issued by the Supreme Court of Alabama and noted in a parenthetical, "It is generally held that where parties *have cross-demands against each other*, the real indebtedness is the excess of one debt over the other." *Id.* (citing *Norris v. Commercial Nat'l Bank of Anniston*, 163 So. 798, 801 (Ala. 1935)) (emphasis added). As explained, Sonya alleged no claims against David.

The supreme court has also confirmed that "[t]he right of offset *is an affirmative defense.* The burden of pleading offset and of proving facts necessary to support it are on the party making the assertion." *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex.), *cert. denied*, 449 U.S. 1015 (1980) (emphasis added). That the supreme court describes the right of offset as an affirmative defense also supports our conclusion that an offset under these

12

circumstances would not have been feasible. Not only was there no pleading for an offset, but Walter's argument does not utilize his purported ability to seek an offset as an affirmative defense to any claim alleged by Sonya.

Walter directs us to *Jenkins v. Jenkins*, 991 S.W.2d 440 (Tex. App.—Fort Worth 1999, pet. denied), but in that case, the trial court awarded a bankruptcy trustee $107,000 in past-due alimony payments, less a $28,000 offset to appellant for damages that he sustained to his home. *Id.* at 443. Thus, unlike here, the case involved competing claims and damages that the trial court was able to offset.

Walter has cited no authority demonstrating that the trial court could have offset any damages that David recovered from Sonya against David's contractual obligation to make alimony payments, nor does the divorce decree contain any language indicating that David's alimony obligation would be suspended if Sonya failed to make the Jeep payments. *See Coker*, 650 S.W.2d at 393 ("In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument.").

Walter additionally complains in his motion for rehearing that we place too much emphasis on Sonya's testimony at the sanctions hearing because "much of that testimony was controverted by David Jennings and the documentary evidence." He argues that we are improperly accepting her testimony over David's testimony. This argument appears to advocate that we not properly

13

apply the abuse-of-discretion standard of review. We therefore summarily reject it.

Walter also argues in his motion for rehearing that he had no opportunity to amend his original petition because David nonsuited his case prior to the sanctions hearing. The record reflects that the trial court signed the order granting the nonsuit on May 24, 2011. Sonya's attorney filed a motion for sanctions approximately six months earlier, on November 12, 2010. There is nothing in the record to show that Walter could not have filed an amended petition between those dates.

Accordingly, we hold that the trial court did not abuse its discretion by sanctioning Walter for violating civil practice and remedies code section 10.001(2). We overrule Walter's fourth issue.

## V. SANCTIONS ORDER DESCRIPTION

In his third issue, Walter argues that the order imposing sanctions inadequately describes the conduct that the trial court found to be in violation of civil practice and remedies code section 10.001(2).

Section 10.005 provides that "[a] court shall describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." Tex. Civ. Prac. & Rem. Code Ann. § 10.005. Merely tracking the language of the statute is insufficient. *Law Offices of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 492 (Tex. App.—Dallas 2005, no pet.).

14

The order imposing sanctions stated in relevant part as follows:

Plaintiff's Original Petition, Request for Equitable Relief, and Request for Disclosure filed on August 6, 2010, was groundless when filed, filed for an improper purpose and includes a claim that is not warranted by existing law, and each factual claim did not have evidentiary support even after a reasonable opportunity for discovery and further investigation, in that: *Plaintiff alleged that contractual*[] *alimony payments may be repaid to Plaintiff or terminated although such a claim was groundless and not warranted by existing law*. [Emphasis added.]

Although concise, the order specifically identifies the conduct underlying the trial court's decision to sanction Walter—that the damages allegations for Sonya's alleged failure to continue making Jeep payments included reimbursement for contractual alimony payments already made, termination of the future contractual alimony obligation, or both. We hold that the conduct portion of the sanctions order is sufficient to meet section 10.005's specificity requirement, and we overrule Walter's third issue.

## VI. Chapter 9

Walter argues in his second issue that the trial court abused its discretion by additionally imposing sanctions under chapter 9 of the civil practice and remedies code.[6] Section 9.012(h) states, "This section does not apply to any proceeding to which Section 10.004 . . . applies." Tex. Civ. Prac. & Rem. Code Ann. § 9.012(h) (West 2002). Having determined that the trial court did not abuse its discretion by sanctioning Walter under chapter 10, we hold that the trial

---

[6]Sonya concedes that sanctions under chapter 9 "would become inapplicable" if we affirm the sanctions order under chapter 10.

15

court abused its discretion by also sanctioning Walter under chapter 9.  We sustain his second issue.

## VII. CONCLUSION

Walter argues on rehearing that "the trial court should be given an opportunity to reconsider its sanctions award in [] light of this Court's ruling that sanctions under Chapter 9 were an abuse of discretion."  We agree.  Having sustained Walter's second issue, we reverse the trial court's order and remand this case to the trial court to reconsider the amount of sanctions to be ordered against Walter, if any, under only chapter 10 of the civil practice and remedies code.  *See* Tex. R. App. P. 43.2(d); *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 449 (Tex. App.—Austin 2004, pets. denied) (remanding case for recalculation of sanctions).


       BILL MEIER
       JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DELIVERED:  November 7, 2013

16